**Jon GUSTAFSON, Plaintiff,**

v.

**BELL ATLANTIC CORPORATION, Nynex Pension Plan, Nynex Health Benefits Plan, Nynex Separation Allowance Plan and Nynex Unnamed Plans 1 Through 5, Defendants.**

No. 98 CIV. 8115(WCC).

United States District Court, S.D. New York.

Oct. 26, 2001.

Law Offices of Gail I. Auster & Associates, P.C., White Plains, NY (Gail I. Auster, Esq., Of Counsel), for Plaintiff.

Morgan, Lewis & Bockius LLP, New York City (Christopher A. Parlo, Esq., Lauren G. Krasnow, Esq., Of Counsel), for Defendants.

## OPINION AND ORDER

WILLIAM C. CONNER, Senior District Judge.

Plaintiff Jon Gustafson brings this action against defendants Bell Atlantic Corporation and its corporate successors (collectively "the Company"[1]), NYNEX Pension Plan, NYNEX Health Benefits Plan, NYNEX Separation Allowance Plan and NYNEX Unnamed Plans 1 through 5 under the Employment Retirement Income Security Act, 29 U.S.C. § 1001 *et. seq.* ("ERISA"), the Fair Labor Standards Act of 1938 as amended, 29 U.S.C. § 201 *et. seq.* ("FLSA"), New York Labor Law and New York common law. Plaintiff alleges, *inter alia,* that the Company intentionally mis-classified him as an independent contractor instead of an employee in order to deny him overtime pay, benefits and participation in several of its retirement and healthcare plans, and that the Company's Benefits Claims Committee (the "Committee") unlawfully denied his request for retroactive application of plan benefits.

Defendants now move for summary judgment pursuant to FED. R. CIV. P. 56. Alternatively, defendants seek indemnification from plaintiff's former company, J.A.G. Services, Inc. ("JAG"), should the Court determine that plaintiff is entitled to any remuneration from the Company. Plaintiff cross-moves for partial summary judgment, seeking a declaration that he was a common law employee and therefore entitled to benefits under ERISA, the FLSA and New York law. For the reasons that follow, defendants' motion is granted in part and denied in part, and plaintiff's motion is granted in part and denied in part.

## BACKGROUND

At least since 1977, the Company has used chauffeur services to provide transportation for its senior executives, enlisting both Company staff drivers ("employee chauffeurs") and independent contract drivers ("contract chauffeurs"), but calling both "executive chauffeurs." From March 1987 until May 1988, plaintiff was a chauffeur at County Limousine ("County Limo"), who provided the Company with chauffeur service. At that time, the Company had two employee chauffeurs. When the Company used an independent contract driving vendor such as County Limo, the vendor sent different drivers for Company executives, retained all authority over those drivers and provided and maintained the cars those drivers used.

While at County Limo, plaintiff sometimes drove Joseph Walsh, then Vice President ("VP") of Personnel for the Company. In early 1988, Walsh and Paul Scarpelli, Manager of the Company's Executive Transportation Department ("ETD"), discussed with plaintiff the possibility of his becoming an employee chauffeur for the Company. However, the

---

**1.** NYNEX Corporation ("NYNEX") and New York Telephone Company are both predecessors of Bell Atlantic Corporation, which presently operates as Verizon Communications Corporation.

Company did not offer plaintiff such a position.

Sometime in 1987, the Company changed its policy and directed that all non-employee chauffeurs become independent contract chauffeurs. The Company required these drivers to form their own corporations, which were required to carry workers' compensation, unemployment compensation and non-owners liability insurance. The Company then contracted with these corporations for their driving services, using standard contracts the Company's legal department had drafted. In May 1988, before incorporating his own corporation JAG, and without a written contract, plaintiff began driving for the Company as a contract chauffeur. Plaintiff incorporated JAG shortly thereafter, and at all times was its sole owner, officer and employee.

In May 1988, the company had retained its two employee chauffeurs and had hired five contract chauffeurs. Unlike contract chauffeurs, employee chauffeurs were salaried and received 1½ times pay for overtime, received a clothing allowance and dry cleaning services and were eligible for all benefits and plans the Company offered. In all other respects, the Company treated employee and contract chauffeurs identically: the Company provided, insured and maintained all cars used; required the same dress code of all drivers; listed all drivers in the Company directory; gave all drivers gasoline credit cards, EZ passes and beepers; reimbursed all drivers for all out-of-pocket expenses including parking, tolls and cleaning and washing the cars; and assigned drivers either as "pool" or "designated" chauffeurs.

A pool chauffeur was not assigned directly to one person. Thus, if no assignment was given, the drivers remained in the chauffeur room waiting to drive executives or to perform other tasks that Scarpelli assigned. A designated chauffeur drove only for one executive, and his schedule was determined by that of the executive. A designated chauffeur was expected to be available on weekends, and plaintiff asserts that when not driving, a designated chauffeur was not at liberty to pick up other fares, which the Company disputes. Plaintiff began as a pool driver but later was assigned as a designated driver to Richard Jalkut, Executive VP of the Company and then to Frank Salerno, the Company's President and Chief Financial Officer.

In 1989, 1991, 1993, 1994, 1995 and 1996, the Company and JAG entered into successive contracts wherein JAG agreed to comply with all Occupational Safety and Health Act ("OSHA") rules and regulations, all applicable federal and state laws and all Equal Employment Office ("EEO") provisions. JAG also agreed to pay all employee taxes, carry all applicable insurance and indemnify the Company "against losses, claims, demands, payments, suits, actions, recoveries and judgment of all nature and description, out of or in any manner caused by the performance of any services or the providing of any materials under this agreement by [JAG]." (Krasnow Aff., Exs. I–L.)

The Company at all times classified plaintiff as an independent contractor, paying him a flat hourly rate with no overtime and providing a meal allotment for days he worked. Plaintiff submitted form invoices to the Company reflecting the hours he worked and the expenses he incurred, the Company paid JAG, and JAG paid plaintiff his wages. Plaintiff incorporated JAG as an "S" Corporation and issued himself (via JAG) an Internal Revenue Service ("IRS") W–2 form for all local, state and federal taxes.

In September 1997, the Company again changed its policy, seeking to use only contract chauffeurs from a single vendor. They solicited bids from various vendors,

proposing fixed hourly rates for driving services. The winning vendor was to hire its own employees, pay them overtime and comply with all insurance and tax laws and regulations. The employee chauffeurs retired and were compensated under a Company plan. Plaintiff submitted a bid on JAG's behalf, but the Company ultimately chose L & J Limousine, which operated as GEM Limousine ("GEM"). After JAG's bid was rejected, plaintiff inquired about becoming an employee chauffeur. The Company instead offered him the choice of a position with GEM or an extension of his contract, both of which plaintiff rejected. Effective November 1, 1997, plaintiff stopped driving for the Company, and he dissolved JAG in February 1998.

On July 24, 1997, sitting *en banc*, the Ninth Circuit Court of Appeals decided *Vizcaino v. Microsoft Corp.*, 120 F.3d 1006 (9th Cir.1997). In that case, the IRS informed Microsoft that certain workers classified as independent contractors were actually common law employees. *Id.* at 1008. Microsoft agreed, issued the workers W–2 forms and paid the IRS for taxes it had mistakenly withheld. *Id.* Plaintiff avers that, "as a result of the publicity over [that] case, plaintiff learned that he was actually a common law employee and that he should have been paid overtime and granted benefits by the Company." (Pl. Rule 56.1 Stmt. ¶ 156.) Plaintiff thereafter retained his present attorney and on June 11, 1998 wrote the Company seeking back overtime pay and benefits. On June 18, 1998, the Company denied plaintiff's requests and on January 27, 1999, the Committee denied his appeal. Plaintiff filed the instant Complaint on November 13, 1998.

## DISCUSSION

### I. *Summary Judgment Standard*

Under Fed. R. Civ. P. 56, summary judgment may be granted where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby*, 477 U.S. 242, 247–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The burden rests on the movant to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine factual issue exists if there is sufficient evidence favoring the nonmovant for a reasonable jury to return a verdict in his favor. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. In deciding whether summary judgment is appropriate, the court resolves all ambiguities and draws all permissible factual inferences against the movant. *See id.* at 255, 106 S.Ct. 2505. To defeat summary judgment, the nonmovant must go beyond the pleadings and "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The court's role at this stage of the litigation is not to decide issues of material fact, but to discern whether any exist. *See Gallo v. Prudential Residential Servs., L.P.*, 22 F.3d 1219, 1224 (2d Cir. 1994).

## II. *ERISA Claims*

### A. *Standard of Review*

■ As a threshold matter, it is necessary to determine the appropriate standard for reviewing the Committee's denial of plaintiff's claim to benefits. A decision to deny benefits "is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan". *Kinstler v. First Reliance Stan-*

*dard Life Ins. Co.,* 181 F.3d 243, 249 (2d Cir.1999) (quoting *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989)). If a plan grants such authority, "denials are subject to the more deferential arbitrary and capricious standard, and may be overturned only if the decision is without reason, unsupported by substantial evidence, or erroneous as a matter of law." *Kinstler,* 181 F.3d at 249 (internal quotations omitted) (quoting *Pagan v. NYNEX Pension Plan,* 52 F.3d 438 (2d Cir.1995)). To determine the appropriate standard of review in the instant action, we must determine whether the Plans grant discretionary authority to the Committee.

▆▆▆ "The plan administrator bears the burden of proving that the arbitrary and capricious standard of review applies ..." *Kinstler,* 181 F.3d at 249. Defendants argue that each Plan vests full and final discretionary authority in its Plan Administrator. (Defs. Mem. Supp. Summ. J. at 15.) As an example, they cite ¶ 14.12 of the NYNEX Management Pension Plan, which vests in the Plan Administrator:

> *the sole and absolute discretion* (a) to construe the terms of the plan, and (b) to determine eligibility for benefits and the amount of benefits provided under the Plan, and any such determination by NYNEX or such Applicable Committee Shall be exclusive.

(Defs. Mem. Supp. Summ. J. at 15.) Defendants argue that the other Plans named in plaintiff's complaint contain similar language. (Defs. Mem. Supp. Summ. J. at 15–16.)

The Second Circuit has held that similar language granting absolute discretionary authority to the Plan Administrator invokes application of the arbitrary and capricious standard of review. *See Pochoday v. Building Serv. 32B–J Pension Fund,* No. 00–9097, 2001 WL 209872, at *3

(2d Cir. March 2, 2001) (finding that the arbitrary and capricious standard applied when the plan gave the trustees "discretionary authority to determine eligibility and interpret the provisions of the plan"); *Jordan v. Retirement Comm. of Rensselaer Polytechnic Inst.,* 46 F.3d 1264 (2d Cir.1995) (applying the arbitrary and capricious standard where the retirement committee was granted broad discretion to interpret the plan); *Administrative Comm. of the Time Warner, Inc. v. Biscardi,* No. 99 Civ. 12270, 2000 WL 1721168, at *7 (S.D.N.Y. Nov. 17, 2000) (applying the arbitrary and capricious standard where the committee was given the "exclusive right to interpret the Plan and decide any matters arising in connection with the administration and operation of the Plan"). Defendants have therefore carried their burden of showing that the arbitrary and capricious standard applies to the Committee's decision.

▆▆▆ Under the arbitrary and capricious standard, the Committee's findings will only be disturbed if they are "without reason, unsupported by substantial evidence, or erroneous as a matter of law." *Pochoday,* 2001 WL 209872, at *3 (quoting *Pagan,* 52 F.3d at 442). Substantial evidence is "such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the decisionmaker and requires more than a scintilla but less than a preponderance." *Biscardi,* 2000 WL 1721168, at *8 (quoting *Miller v. United Welfare Fund,* 72 F.3d 1066, 1072 (2d Cir.1995)). As the Second Circuit explained, "[w]here the trustees of a plan impose a standard not required by the plan's provisions, or interpret the plan in a manner inconsistent with its plain words, or by their interpretation render some provision of the plan superfluous, their actions may well be found to be arbitrary and capricious." *Miles v. N.Y. State*

*Teamsters Conference Pension & Ret. Fund Employee Pension Benefit Plan,* 698 F.2d 593, 599 (2d Cir.1983). In interpreting the plan, "where it is necessary for a reviewing court to choose between two competing yet reasonable interpretations of a pension plan, this court must accept that offered by the administrators." *Pagan,* 52 F.3d at 443. Questions of law under the arbitrary and capricious standard are reviewed *de novo. Biscardi,* 2000 WL 1721168, at *8 (citing *Weil v. Retirement Plan Admin. Comm. of the Terson Co.,* 913 F.2d 1045, 1049 (2d Cir. 1990)).

### B. *Review of the Committee's Decision*

In its decision to deny benefits, the Committee first determined that plaintiff was not eligible to participate in the Plans. The Committee emphasized that under Section 3.1, employees were only eligible if they were *"on the payroll* of a participating Company." (Defs.Mem.Supp.Summ. J., Ex. W.) The Committee found that because plaintiff was not on the payroll of a participating company, he did not meet the eligibility requirements for the Plan. On appeal, the Appeals Committee found that the Committee's decision was correct "under the clear and unambiguous terms of the plan." (Defs.Mem.Supp.Summ. J., Ex. Y.) The Appeals Committee then decided that plaintiff did not even qualify as an "employee" of a participating company; a threshold requirement for participation in the Plan. For these reasons, the Appeals Committee affirmed the denial of benefits.

■ We look first at the Committee's finding that plaintiff was not an "employee" of a participating company. The crux of plaintiff's argument to the Committee was that he was misclassified as an independent contractor when he was in fact a common law employee. Although the Committee did not consider this claim, it was discussed at length by the Appeals Committee. The Appeals Committee based its finding on a determination that plaintiff was not an "employee" of the Company, but rather was at all times an employee of JAG.

■ "While the findings of fact of the Committee are given deferential review, the Committee's conclusion, based on those facts, that the defendants were not employees under the ERISA statute is a question of law that is reviewed *de novo." Biscardi,* 2000 WL 1721168, *9 (citing *Brock v. Superior Care, Inc.,* 840 F.2d 1054, 1059 (2d Cir.1988)). We must therefore consider *de novo* the Appeals Committee decision that plaintiff was not an "employee." The Second Circuit has held that "the employment status of an individual for purposes of ERISA is not determined solely by the label used in the contract between the parties." *Sharkey v. Ultramar,* 70 F.3d 226, 232 (2d Cir.1995). Instead, the determination of whether an individual is in fact a "common law" employee under ERISA involves a balancing of factors set forth in *Nationwide Mut. Ins. Co. v. Darden,* 503 U.S. 318, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992). The factors to be considered under this standard are:

the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

*Darden,* 503 U.S. at 323, 112 S.Ct. 1344. "[T]he 'greatest emphasis' should be placed ... on the extent to which the hiring party controls the 'manner and means' by which the worker completes his or her assigned task." *Eisenberg v. Advance Relocation & Storage, Inc.,* 237 F.3d 111, 114 (2d Cir.2000) (citing *Frankel v. Bally,* 987 F.2d 86, 89 (2d Cir.1993)).

The Appeals Committee did not discuss any of the *Darden* factors in reaching its conclusion. Instead, it focused almost exclusively on the existence of the contract designating plaintiff as an employee of JAG and an independent contractor; an approach the Second Circuit has explicitly rejected. *See Sharkey,* 70 F.3d at 232. Considering the *Darden* factors, especially the crucial element of control, it is not clear that plaintiff was not a common law employee of the Company. However, the deference we are required to show towards the Committee's findings requires us to accept its decision on other grounds.

 This Court is required to accept the Committee's interpretation of the Plans' provisions unless arbitrary and capricious. *Pochoday,* 2001 WL 209872, at *2. Even if we find that plaintiff is a common law employee under ERISA, it does not follow that he is automatically entitled to benefits. "An ERISA plan may ... legitimately exclude certain classes of ERISA 'employees' as long as that exclusion in not based on age or length of employment." *Biscardi,* 2000 WL 1721168, *9 (citing *Wolf v. Coca-Cola Co.,* 200 F.3d 1337, 1340 & n. 2 (11th Cir.2000)) (additional citations omitted). The Plans define an "eligible" employee as "a Salaried Employee on the payroll of a partici-

pating company." (Defs.Mem.Supp.Summ. J., Ex.O, ¶ 3.1.) Interpreting this provision, the Committee found that plaintiff was not an "eligible" employee because he was not salaried or on the payroll of a participating company. In response to the Committee's finding, plaintiff argues that employee chauffeurs, who were on the payroll and thus given benefits, were misclassified as "salaried" rather than "hourly." Plaintiff further argues that if employee chauffeurs are allowed benefits even though not technically "salaried," plaintiff should not be excluded from participation in the Plans. (Pl. Reply Mem. Opp. Summ. J at 4–6.) Where there are two competing interpretations of a plan's provisions, this Court is required to accept the administrator's interpretation. *Pagan,* 52 F.3d at 443. The Committee's conclusion that plaintiff was not an eligible employee because not "on the payroll" was reasonable in light of the evidence and not arbitrary and capricious. As such, this Court must defer to the Committee's findings that plaintiff is not eligible for benefits under the Company's Plans. Because all of plaintiff's ERISA claims turn on his eligibility under the Plans, defendants' motion for summary judgment on this issue is granted.

### III. *Overtime Compensation*

Plaintiff asserts claims under FLSA § 207(a), 29 U.S.C. 207(a)(1), and New York Labor Law §§ 650 and 656 for unpaid overtime compensation. Plaintiff argues that by misclassifying him as an independent contractor, defendants failed to pay plaintiff overtime compensation as required by the FLSA[2] and New York La-

---

2. 29 U.S.C. § 207(a)(1) provides in relevant part:

> Except as otherwise provided in this section, no employer shall employ any of his employees ... for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

bor Law.[3] Plaintiff moves for summary judgment on the issue of his entitlement to overtime compensation as a common law employee. Plaintiff seeks compensatory as well as liquidated damages. Defendants argue that genuine issues of fact exist regarding plaintiff's status as a common law employee. Defendants also cross-move to dismiss plaintiff's FLSA claims prior to November 1996, and his New York Labor Law overtime claims prior to November 1992, as barred by the statute of limitations. Finally, defendants argue that they are entitled to indemnification from JAG for any damages assessed.

### A. *Statute of Limitations*

New York Labor Law § 198(3) provides a six-year statute of limitations for wage claims. The FLSA, on the other hand, provides a two-year statute of limitations unless the violations are "willful," in which case a three-year statute of limitations applies. 29 U.S.C. § 255(a). The Second Circuit explained that "a violation is willful for purposes of the FLSA limitations provision only if the employer knowingly violates or shows reckless disregard for the provisions of the Act." *Brock*, 840 F.2d at 1062; *see also McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133, 108 S.Ct. 1677, 100 L.Ed.2d 115 (the standard for determining willful behavior is whether "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute"). Although plaintiff first argued that this Court should apply the three-year statute of limitations of § 255(a) (Pl. Mem. Supp. Summ. J. at 16–17), and the six-year statute of limitations of New York Labor Law § 198(3), he later argued that no statute of limitations should apply because the doc-

trines of continuing violation, equitable tolling and equitable estoppel apply. (Pl. Mem. Opp. Summ. J. at 8–13.)

 The continuing violation doctrine "allows a plaintiff in certain circumstances to recover on the basis of an ongoing policy or practice of illegal activity initiated prior to the limitations period." *Pollis v. New Sch. for Soc. Research*, 132 F.3d 115, 118 (2d Cir.1997). Plaintiff argues that the continuing violation doctrine, traditionally recognized in cases under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), should be applied in this action because the Company engaged in an ongoing "discriminatory policy or practice" by repeatedly misclassifying plaintiff as an independent contractor. (Pl. Mem. Opp. Summ. J. at 8–10.) Contrary to plaintiff's assertion, however, the continuing violation doctrine is inapplicable in this action. In *Pollis*, the Second Circuit held that discriminatory pay is not a basis for the continuing violation doctrine under Title VII. 132 F.3d at 118. As the *Pollis* court explained, each paycheck in salary discrimination cases constitutes a "discrete, individual wrong rather than a single and indivisible course of wrongful action." *Id.* at 119. Thus, "each continuation of the wrongful conduct may be regarded as a separate cause of action for which suit must be brought within the [limitations] period beginning with its occurrence." *Id.* There is no reason why different reasoning should apply to alleged discrimination under the FLSA or New York Labor Law. We therefore reject plaintiff's argument that the continuing violation doctrine suspends the statute of limitations.

---

**3.** 12 N.Y.C.R.R. 142–2.2 provides that "an employer shall pay an employee for overtime at a wage rate of 1½ times the employee's

regular rate in the manner and methods provided in ... the Fair Labor Standards Act of 1938, as amended ...."

The doctrine of equitable tolling is also inapplicable in this action. A court may apply equitable tolling in cases where a defendant "concealed from the plaintiff the existence of a cause of action." *Cerbone v. ILGWU,* 768 F.2d 45, 48 (2d Cir.1985). Under equitable tolling, the statute of limitations does not begin to run until "the plaintiff either acquires actual knowledge of the facts that comprise his cause of action or should have acquired such knowledge through the exercise of reasonable diligence after being apprised of sufficient facts to put him on notice." *Id.* at 48. In support of his argument for equitable tolling, plaintiff claims that defendants concealed the existence of his overtime claims by "affirmatively and repeatedly" misleading him that he was an independent contractor "with no right to statutory overtime from the Company." (Pl. Mem. Opp. Summ. J. at 12.) Even accepting this allegation as true, plaintiff fails to show that defendants concealed any facts that would entitle him to relief under the FLSA or New York Labor Law. In his deposition testimony, plaintiff acknowledges his understanding that he was treated as an independent contractor for purposes of payment and compensation. (Pl. Dep. at 112–13.) There is no suggestion in the record that defendants attempted to conceal this fact from him. Furthermore, it is clear that plaintiff knew the *facts* that would comprise a cause of action under either the FLSA or New York law (that he was receiving straight pay for overtime) even if he did not know that he had a legal claim under those statutes. There is thus no basis for applying the doctrine of equitable tolling.

Plaintiff also argues that defendants should be estopped from arguing a statute of limitations defense under the doctrine of equitable estoppel. "A defendant may be equitably estopped from asserting the statute of limitations in cases where the plaintiff can prove that he knew of the existence of a cause of action but the defendant's conduct caused [him] to delay in bringing his lawsuit." *Buttry v. General Signal Corp.,* 68 F.3d 1488, 1493 (2d Cir.1995) (quoting *Cerbone,* 768 F.2d at 50). Under plaintiff's earlier argument for equitable tolling, plaintiff alleged that he did not know of the existence of a cause of action. Plaintiff now argues, alternatively, that he *did* know that a cause of action existed, but was prevented from bringing suit by defendants' misconduct. Although advancing such contradictory arguments in his pleadings, plaintiff does not plead any facts that would implicate the doctrine of equitable estoppel.

Plaintiff's original argument, that this Court should apply a three-year statute of limitations to his FLSA claim because defendants "wilfully sought to conceal from plaintiff its obligations to pay overtime at time and one-half, by advising the plaintiff ... that he was an independent contractor and was not entitled to benefits from the company, including overtime," also fails. (Pl. Mem. Supp. Summ. J. at 16.) In the alternative, plaintiff argues that they acted in reckless disregard for the provisions of the Act by failing to determine whether plaintiff was a common law employee protected under the FLSA. In response, defendants argued that plaintiff has offered no evidence of willfulness and that the two-year statute of limitations applies.

We agree that the plaintiff does not offer sufficient evidence to carry his burden of proving a willful or reckless violation of the FLSA. Plaintiff only speculates that the Company willfully attempted to conceal plaintiff's eligibility for overtime pay by hiring him as an independent contractor. There is nothing in the record to support this allegation. Similarly, plaintiff

offered no credible evidence to support his argument that defendants were reckless in failing to determine whether plaintiff was eligible for overtime pay under the FLSA. Plaintiff merely concluded that willfulness and recklessness existed, without pointing to any concrete evidence in the record. Accordingly, plaintiff fails to prove willfulness sufficient to implicate the three-year statute of limitations of FLSA § 255(a).

In conclusion, this Court does not find any credible reason to apply an exception to the statute of limitations provided by the FLSA or New York Labor Law. Plaintiff's FLSA claim is therefore governed by the two-year statute of limitations contained in 29 U.S.C. § 255(a), and his state law claim is governed by the six-year statute of limitations in New York Labor Law § 198(3). As a result, all FLSA claims prior to November of 1996, and all New York Labor Law claims prior to November 1992, are time barred. We now consider only those overtime claims arising within the applicable limitations periods.

### B. *Economic Reality Test*

The overtime provisions of the FLSA and New York Labor Law apply only to individuals who are "employees." Although classified by the Company as an independent contractor, plaintiff maintains that he qualifies as a common law employee within the meaning of these statutes and should be granted summary judgment on this issue.

In determining whether someone is an employee for FLSA purposes [4], a court employs the "economic reality" test which considers: (1) the degree of the employer's control over the worker; (2) the worker's opportunity for profit or loss and his investment in the business; (3) the degree of skill and independent initiative required to perform the work; (4) the permanence or duration of the working relationship; and (5) the extent to which the work is an integral part of the employer's business. *See Brock*, 840 F.2d at 1058–59 (citing *United States v. Silk*, 331 U.S. 704, 716, 67 S.Ct. 1463, 91 L.Ed. 1757 (1947)); *McGuiggan v. CPC Int'l, Inc.*, 84 F.Supp.2d 470, 479 (S.D.N.Y.2000). The test is intended to be broad "so that the [provisions will] have the widest possible impact in the national economy." *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir.1984).

No one factor in this common law test is dispositive and "the test is based on the totality of the circumstances." *Brock*, 840 F.2d at 1059. Furthermore, "[t]he ultimate concern is whether, as a matter of economic reality, the workers depend upon someone else's business for the opportunity to render service or are in the business for themselves." *Id; see also McGuiggan*, 84 F.Supp.2d at 479 ("In short, if the Plaintiff[ ][was] in business for [himself], [he] was not [an] employee[ ]; [i]f [he] was economically dependent on and within the direct control of [the Company], [he] was [an] employee[ ]."). Finally, "[t]he existence and degree of each factor is a question of fact while the legal conclusion to be drawn from those facts— whether workers are employees or independent contractors—is a question of law." *Brock*, 840 F.2d at 1059. After analysis of

---

4. In his motion for summary judgment, plaintiff asserts that the definition of "employee" under New York Labor Law is the same as that under the FLSA. Defendant does not contest this assertion, and there are no cases cited that suggest otherwise. Indeed, the definition of "employee" under New York Labor Law § 651(5) appears similarly broad. Therefore, this Court will only consider whether plaintiff was an "employee" within the meaning of the FLSA. *See Lopez v. Silverman*, 14 F.Supp.2d 405 (S.D.N.Y.1998) (applying a similar analysis).

the five economic reality factors, we conclude that Gustafson was an employee within the meaning of the FLSA.

Turning first to the "crucial" factor of control, *Carter*, 735 F.2d at 12, the Company clearly exercised a great degree of control over plaintiff's daily activities. The Company told plaintiff whom to drive and, when he was designated to a specific executive, his schedule was determined by the executive. Thus, he had little discretion over when and how long to work. Moreover, the Company provided and controlled the instrumentalities, tools and location of plaintiff's job, by supplying and servicing his car, supplying and covering the cost of his beeper and nearly all other expenses he incurred while driving, and determining, based on the executive's travel needs, where plaintiff was to drive. Accordingly, it is indisputable that the Company exercised virtually complete control over the plaintiff's on-the-job activities.

The second factor, the opportunity for profit and loss and the investment in the business, also weighs in favor of finding that plaintiff was an employee rather than an independent contractor. Plaintiff formed a corporation at the request of and for the sole purpose of serving the Company. There is no evidence that JAG solicited outside business, or realized a profit other than the hourly compensation plaintiff received from the Company. Indeed, the Company's demands on plaintiff's time essentially precluded him from seeking outside revenue. Plaintiff claims that he invested very little in JAG simply because he did not need to; the Company provided and maintained the car he drove and covered most of his driving expenses. He further states that because he had to pay himself wages and pay taxes through JAG, he "incurred numerous expenses in the form of JAG that employee [chauffeurs] did not." (Pl. Rule 56.1 Stmt. ¶¶ 48–52.)

Plaintiff asserts that these expenses, when coupled with the Company's restrictions on his time, show that JAG had little opportunity for profit but much for loss.

Defendants contend that plaintiff leased a second car for work and stocked an office with supplies, thus making a sizeable investment in JAG. They also note the favorable tax breaks and generous compensation he enjoyed through JAG, an "S" Corporation. Furthermore, they argue that had JAG prevailed in its 1997 bid to supply the Company with exclusive car service, plaintiff would have greatly expanded JAG's business, both internally and externally. Finally, they assert that the Company's alleged consumption of plaintiff's time is a question for the jury. In sum, they contend that a jury could find that plaintiff was in fact in business, and profitably so.

It is undisputed that plaintiff technically was in business, having incorporated JAG. However, he did so at the Company's behest, for he would not otherwise have been able to drive for the Company. The minor investments that plaintiff made in JAG were insubstantial. Although plaintiff argues that he had opportunity for loss under JAG, it is not the type of loss this test envisions. For example, plaintiff did not have the opportunity to make an ill-advised, independent business decision that would result in a significant loss of profit for JAG. Moreover, despite submitting a bid on JAG's behalf to service the Company's chauffeur needs, which suggests that he would have operated JAG purely as an independent business, plaintiff did not adopt this posture for JAG until the end of his tenure with the Company. Indeed, throughout the time plaintiff drove for the Company, JAG was incorporated only because this was a necessary pre-condition to working for the company. JAG was economically dependent on the Company for

all its revenues, and, for practical purposes, was not "in business" as defendants suggest. We therefore conclude that plaintiff had minimal opportunity for entrepreneurial profit and loss under JAG.

The third, fourth and fifth factors are split equally between the parties. There is no genuine dispute that plaintiff's duties as a chauffeur required no specialized skill or initiative, suggesting that plaintiff was an employee rather than an independent contractor. The fifth factor, however, weighs in favor of defendants, for it is clear that chauffeur services do not constitute an integral part of a major telephone company's regular business. It is similarly clear that plaintiff's relationship with the company lasted almost ten years. However, this factor does not favor either party. Although plaintiff worked for the company for nearly ten years, his employment was governed by a contractual agreement that was subject to renewal each year.

Weighing all the *Brock* factors, we conclude, as a matter of law, that plaintiff was an employee of the Company for FLSA purposes. The first, second and third factors favor plaintiff, while only the fourth factor favors defendants. As a matter of "economic reality," plaintiff depended on the Company for the opportunity to render services. *See Brock*, 840 F.2d at 1059. Although he technically formed his own corporation, the record does not show that plaintiff was truly "in business" for himself. *Id.* We therefore hold that plaintiff is an "employee" under the broad definition of the FLSA, and is therefore entitled to overtime pay under FLSA § 207(a) for the period beginning November of 1996, and under New York Labor Law § 198(3) beginning November 1992. Plaintiff's motion for summary judgment on this issue is granted.

## C. *Liquidated Damages*

 Under the FLSA, an employer who violates the overtime provision is liable in the amount of unpaid overtime compensation, "and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). "Liquidated damages are not a penalty exacted by the law, but rather compensation to the employee occasioned by the delay in receiving wages due caused by the employer's violation of the FLSA." *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 142 (2d Cir.1999) (citing *Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572, 583–84, 62 S.Ct. 1216, 86 L.Ed. 1682 (1942)).

 A court has discretion to deny an award for liquidated damages if an employer can show that the failure to pay overtime was in good faith and that the employer had reasonable grounds to believe that the act or omission was not a violation of the FLSA. *See* 29 U.S.C. § 260. Defendants argue that this Court should use its discretion and not award liquidated damages in this action. Defendants state that "no evidence suggests, let alone establishes, that the Company acted in bad faith." (Defs. Mem. Opp. Summ. J. at 18.) Contrary to defendants' assumption, however, plaintiff does not need to show the existence of bad faith. Instead the burden rests on the Company to show that it acted in good faith. "[T]he burden [of proving good faith and reasonableness] is a difficult one, with double damages being the norm, and single damages the exception." *Herman*, 172 F.3d at 142 (citation omitted). In order to meet this burden, "the employer must take active steps to ascertain the dictates of the FLSA and then act to comply with them." *Id.* (citation omitted).

Defendants offer no evidence to establish that the Company took active steps to ascertain its compliance with the FLSA.

For example, there is no evidence that the Company ever sought an expert or outside opinion on whether the contract drivers were exempt from the protections of the FLSA. Defendants' argument that the Company never received any indication from an outside authority that it should pay plaintiff overtime is immaterial. Defendants have failed to demonstrate a good faith attempt to comply with the FLSA. The plaintiff is therefore entitled to liquidated damages under the FLSA equal to the amount of unpaid overtime compensation accrued within the two-year limitations period.[5]

■■■■ New York Labor Law also allows for liquidated damages in overtime compensation claims. Under N.Y. LAB. LAW § 198(1–a), "upon a finding that the employer's failure to pay the wage required by this article was wilful, an additional amount as liquidated damages equal to twenty-five percent of the total amount of the wages found are due."[6] Whereas liquidated damages are mandated under the FLSA absent a showing of good faith, New York Labor Law requires a finding of willfulness. A willful violation occurs when "the employer knowingly, deliberately, or voluntarily disregards its obligation to pay wages." *Ayres v. 127 Restaurant Corp.*, 12 F.Supp.2d 305 (S.D.N.Y.1998). As discussed earlier, *see infra* Part III.A., plaintiff has failed to produce evidence sufficient to establish willfulness that would entitle him to liquidated damages under

New York law. *See Epelbaum v. Nefesh Achath B'Yisrael, Inc.*, 237 A.D.2d 327, 654 N.Y.S.2d 812 (N.Y.App.Div.1997) (finding that plaintiff's "mere conclusory allegations of willfulness" were insufficient to award liquidated damages on summary judgment). Therefore, plaintiff's motion for summary judgment on the issue of liquidated damages under New York law is denied.

**D. *Indemnification***

■■■■ In their third party claims against JAG, defendants point to the contract negotiated between JAG and the Company which contains an Indemnification Clause.[7] In light of this clause, they argue that JAG must indemnify the Company for any damages awarded to plaintiff in this action.

In *Herman*, 172 F.3d at 144, the Second Circuit held that there is no right to contribution or indemnification for employers found liable under the FLSA. Defendants argue, however, that the indemnification claim in this action involves a contractual obligation and is therefore distinguishable from *Herman*. According to defendants, their request for indemnification is "purely one for damages for breach of contract by a third party" and, unlike *Herman*, does not arise under the FLSA. (Defs. Mem. Opp. Summ. J. at 19.) Defendants also argue that JAG was required by contract to comply with any applicable federal and state laws. If the Company is liable under the FLSA for failure to pay overtime

---

5. Under FLSA § 216(b), plaintiff is also entitled to attorneys' fees incurred in relation to this portion of his FLSA claim.

6. Section 198(1–a) also allows an employee who prevails in a wage claim action reasonable attorneys' fees. Plaintiff would therefore be entitled to attorneys' fees related to his successful New York Labor Law overtime claim.

7. The Indemnification Clause states that the Contractor:
 shall indemnify . . . the Telephone Company . . . from and against losses, claims, demands, payments, suits, actions, recoveries, and judgment of all nature and description, out of or in any manner caused by the performance of any services or the providing of any materials under this agreement by Contractor.
 (Defs. Mem. Supp. Sum. J. at 26.)

wages, defendants argue that it is a result of JAG's breach of its contractual obligation to comply with this law. (Defs. Mem. Supp. Summ. J. at 27, Ex. J.)

■ Defendants' attempt to characterize their claim as a request for breach of contract damages rather than an action for indemnification under the FLSA is unpersuasive. Whether or not JAG breached a contractual obligation, defendants' attempt to recover damages from JAG for overtime violations is an attempt to receive indemnification for FLSA liability. As *Herman* makes clear, "there is no right to contribution or indemnification for employers held liable under the FLSA." 172 F.3d at 144. Even assuming JAG were found culpable for FLSA violations as plaintiff's "co-employer," the right to indemnification is still absent. *See id.* at 143 (explaining that "regardless of the status of the party from whom [the employer] seeks contribution" no right to indemnification exists for employers under the FLSA). Furthermore, allowing defendants to obtain indemnification from JAG contradicts the policies of the FLSA. As *Herman* explains, "the [FLSA] was designed to regulate the conduct of employers for the benefit of employees ...." *Id.* at 144. Allowing indemnification in cases such as this would permit employers to contract away their obligations under the FLSA, a result that flouts the purpose of the statute. We therefore hold that the Company has no right to indemnification for damages assessed under the FLSA.[8] Plaintiff's motion for summary judgment on the issue of defendants' third-party counterclaims is granted.

**8.** Although this discussion only relates to indemnification under the FLSA, the same reasoning holds for similar provisions of New York Labor Laws. The policies behind the

## IV. *NY State Law Claims*

### A. *Preemption of State Common Law Claims*

■ Defendants move for summary judgment on the common law fraudulent misrepresentation, negligent misrepresentation and breach of contract claims (collectively the "state law claims") arguing that they are preempted by ERISA. Under ERISA § 514(a), the statute "supercede[s] any and all state laws insofar as they may now or hereafter *relate to* any employee benefit plan." 29 U.S.C. § 1144(a) (emphasis added). This preemption provision is intended to be expansive, as it "represents Congress' aim to establish as an area of 'exclusive federal concern' the regulation of employee benefits plans." *Diduck v. Kaszycki & Sons Contractors,* 974 F.2d 270, 287 (2d Cir.1992) (citing *FMC Corp. v. Holliday,* 498 U.S. 52, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990)); *Devlin v. Transportation Communications Int'l Union,* 173 F.3d 94, 98 (2d Cir.1999). The phrase "relates to" should therefore be interpreted broadly. *See Diduck,* 974 F.2d at 287 (citing *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 98, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983)). Defendants argue that plaintiff's state law claims "relate to" ERISA plans and are therefore preempted.

Plaintiff argues that the state law claims do not relate to an ERISA plan because the employer, rather than the Plan Administrator, would be liable for any damages. We do not consider at this time which defendant would be liable for any damages, for no matter where liability rests, these claims "relate to" an ERISA plan and are preempted. Although the Court should not apply ERISA to preempt state

New York laws are similar to the federal statute. In fact, the overtime rate provision implicated in the instant action refers explicitly to the FLSA. *See infra* n. 3.

actions that have only an incidental impact on employee benefit plans, plaintiff's claims in this respect are not of the type that are "too tenuous, remote, or peripheral ... to warrant a finding that the law 'relates to' the plan." *Aetna Life Ins. Co. v. Borges,* 869 F.2d 142, 145 (2d Cir.1989). As the Second Circuit explained, "laws that have been ruled preempted are those that provide an alternative cause of action to employees to collect benefits protected by ERISA, refer specifically to ERISA plans and apply solely to them, or interfere with the calculation of benefits owed to an employee." *Id.* at 146. In his state law claims, plaintiff not only refers to defendants' failure to pay employee benefits, but also seeks to recover benefits under these plans. The claims clearly "refer to" plans regulated by ERISA and are therefore preempted by that statute. The portion of defendants' motion that seeks summary judgment on plaintiff's state law claims is granted.

## B. *Additional Wages*

 Plaintiff argues that he is entitled to non-ERISA benefits—Social Security contributions, unemployment compensation premiums, unemployment insurance, dry cleaning expenses and supplemental automobile insurance—that he claims were denied him as a result of his misclassification as an independent contractor. Plaintiff argues that these payments fall within the meaning of "wages" as defined under New York Labor Law.[9] Defendants do not address this argument, but instead argue that JAG has already paid these expenses on behalf of plaintiff. (Defs. Mem. Supp. Summ. J. at 26.) As discussed above, the

existence of a co-employer does not absolve an employer of its legal duties to an employee. However, we find that plaintiff is not entitled to these additional payments on other grounds.

Although New York explicitly includes benefits and wage supplements in its definition of "wages," N.Y. LAB. LAW § 190(1), courts have recognized that this definition should not be interpreted too broadly. *Truelove v. Northeast Capital & Advisory, Inc.,* 95 N.Y.2d 220, 715 N.Y.S.2d 366, 738 N.E.2d 770 (2000). The New York Court of Appeals noted that "the Legislature elected not to define [the term wages] to cover all forms of employee remuneration." *Id.* at 368, 738 N.E.2d 770. Plaintiff has not cited any case in which the term "wages" under New York law has been extended to cover the types of expenses listed here. We decline to extend the definition to cover these expenses. However, even if the term "wages" did cover these expenses, plaintiff has offered no evidence to show that he is entitled to reimbursement. When plaintiff agreed by contract to the amount of his hourly compensation, he understood that he would have to pay these expenses himself. Plaintiff bases his claim for recovery on the fact that the Company paid these expenses for employee chauffeurs. However, there is no evidence to suggest that the wages paid to employee chauffeurs were not set to reflect the Company's payment of these expenses on their behalf. Additionally, unlike overtime compensation, no statutory provision requires employers to pay these expenses to their employees. We therefore grant defendants' motion for sum-

---

9. N.Y. LAB. LAW § 190(1) states that the term "wages" includes "benefits or wage supplements as defined in section one hundred ninety-eight-c of this article, except for purposes of section one hundred ninety-one and one hundred ninety-two of this article." Sec-

tion 198(c) provides "the term 'benefits or wage supplements' includes, but is not limited to, reimbursement for expenses; health, welfare, or retirement benefits; and vacation, separation, or holiday pay."

mary judgment on plaintiff's non-ERISA benefits claims.

## CONCLUSION

For the reasons stated above, we grant defendants' motion for summary judgment in part dismissing plaintiff's ERISA claims, New York common law claims and claims for non-ERISA benefits. However, we deny defendants' motion for summary judgment on the issue of indemnification and for dismissal of plaintiff's FLSA claims. We grant plaintiff's cross-motion for partial summary judgment in part, declaring that plaintiff was an employee for FLSA purposes and entitled to liquidated damages under the Act. However, plaintiff's motion for summary judgment on his ERISA claims, and for liquidated damages under New York law, is denied.

**SO ORDERED.**