Elaine L. CHAO, Secretary of Labor, United States Department of Labor, Plaintiff,

v.

FIRST NATIONAL LENDING CORPORATION., et al., Defendants.

No. 1:04 CV 617.

United States District Court, N.D. Ohio, Eastern Division.

March 31, 2006.

Maureen M. Cafferkey, U.S. Department of Labor, Office of the Solicitor, Cleveland, OH, for Plaintiff.

John A. Huettner, James R. Douglass, James R. Douglass Co. LPA, Shaker Heights, OH, for Defendants.

## MEMORANDUM OPINION

DONALD C. NUGENT, District Judge.

This matter is before the Court subsequent to a three-day bench trial which began on July 11, 2005. Following trial, the parties were given the opportunity to file post trial briefs, and to submit proposed findings of fact and conclusions of law. The post-trial briefing was completed several months later.

The original Complaint was filed by the Secretary of Labor against First National Lending Corporation in March of 2004. (ECF # 1). That Complaint was amended in August of the same year. (ECF # 18). The Amended Complaint requests an injunction to prevent Defendants from violating the provisions of Sections 15(a)(2) and 15(a)(5) of the Fair Labor Standards Act of 1938, as amended (52 Stat. 1060, 29

U.S.C. 201 *et seq.*)(hereinafter the "FLSA"), and to recover damages for unpaid minimum wage and overtime compensation allegedly due to Defendants' employees.[1]

### ANALYSIS

The trial commenced on July 12, 2005. Opening statements were heard and the Plaintiff called the following witnesses: Gary Bise, Robin Samara, Victoria Terifaj, Rosemary Shell and Roger Citino. On the second day of trial, testimony continued with Roger Citino and Joann Lach, and the Plaintiff then rested its case. On the final day the Defense called Lisa Scherzer to testify and then rested. The parties submitted their final arguments in writing in the form of post-trial briefs and were given the opportunity to file proposed findings of fact and conclusions of law.

### A. Overtime Pay for Hourly Workers

The Defendants concede that clerical and administrative workers are subject to the minimum wage and overtime provisions of the FLSA and that they should have been paid one and one-half times their hourly rate for any hours worked over forty hours per week. (ECF # 64). They have offered no credible evidence to contradict the findings of Joann Lach, the investigator for the United States Department of Labor, who calculated the amount of overtime pay owed to each hourly worker.

### B. Minimum Wage for Loan Officers

■ Section 6 of the FLSA requires every employer who is subject to its re-quirements to pay each of its employees, the minimum wage of $5.15 per hour. An employee cannot waive his or her right to minimum wage. *Barrentine v. Arkansas–Best Freight System, Inc.,* 450 U.S. 728, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981); *Brooklyn Savings Bank v. O'Neil,* 324 U.S. 697, 65 S.Ct. 895, 89 L.Ed. 1296 (1945). The Defendants have stipulated that they are subject to the requirements of the Act. (Joint Stipulations 2–9). Further, the Defendants have not challenged that allegation that they failed to pay each of their loan officers $5.15 per hour for each hour worked, each week of their employment. Rather, the Defendants assert that their loan officers are not employees for the purposes of the FLSA and that they fall within an exemption to minimum wage requirement.

### 1. Definition of "Employee"

■ The FLSA defines an employee as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). There is no question that the Defendants are "employers" under the Act. An individual is employed under the FLSA if they are suffered or permitted to work. 29 U.S.C. § 203(g). The United States Supreme Court has held that in order to determine whether a work is an employee for purposes of the FLSA, courts must decide whether as a matter of "economic reality" an individual is an employee, economically dependent on the principal, or is an independent contractor in business for himself. *Rutherford Food Corp. v. McComb,* 331 U.S. 722, 728, 67 S.Ct. 1473, 91 L.Ed. 1772 (1947);[2] *Lil-*

---

**1.** The Complaint included an Exhibit (A) that listed 29 individuals who were current or former FNL employees at the time of the investigator's initial investigation. The Plaintiff is now seeking damages for minimum wage and overtime violations against 79 employees. Plaintiffs submitted evidence relating to the hours worked and wages received for each of these 79 employees. Defendants have not objected to the presentation of evidence relating to any of these employees. Pursuant to Fed. R. Civ. Pro. 15(b), the Court will therefore rule on the claims made with regard to all 79 employees.

**2.** Defendants attempt to use *Rutherford* to support their proposition that the economic

*ley v. BTM Corp.*, 958 F.2d 746, 750 (6th Cir.1992).

■ In applying this test, courts consider a variety of factors including, but not limited to: (1) the degree to which the alleged employee was independent or subject to the control of the defendant, (2) the worker's opportunity for profit and risk of loss, (3) the worker's investment in the facilities of the business, (4) the permanency of the working relationship, (5) the degree of skill required to perform the work, (6) and the degree to which the worker's services were an integral part of the defendant's business. *United States v. Silk*, 331 U.S. 704, 67 S.Ct. 1463, 91 L.Ed. 1757 (1947); *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 67 S.Ct. 1473, 91 L.Ed. 1772 (1947); *Western Union Telegraph Company v. McComb*, 165 F.2d 65 (6th Cir.1947), cert. denied, 333 U.S. 862, 68 S.Ct. 743, 92 L.Ed. 1141 (1948); *Luther v. Z. Wilson, Inc.*, 528 F.Supp. 1166 (S.D.Ohio 1981). No one factor is determinative.

■ The loan officers were subject to loose time requirements. Nonetheless, they were supervised to some degree by FNL administrative employees. The offices and meeting rooms were provided by the Defendants. Clerical assistants for the loan officers were hired and paid for by the Defendants. There is no evidence that the loan officers had any substantial share in the risk of loss for the company or that they made any payment toward or had any input in the expenses incurred by the office. However, if FNL had gone out of business, it does not appear that the loan officers could have remained in business on their own. The loan officers were paid by commission, so in that sense had an independent opportunity for personal profit, but they did not share in the business' overall profit or loss. The fact that sales people are paid on commission does not automatically render them independent contractors.

The Defendants argue that loan officers were free to spend their own money advertising and marketing the products they sold, but they cite to no testimony supporting this fact, nor to any evidence that any of the loan officers at issue actually acted on this alleged freedom. There is testimony in the record, however, that the Defendants placed ads in the yellow pages, newspapers and on the radio, and that the business paid for those ads. (Tr. 374–376). There was also testimony that many loan officers relied entirely on leads that came from that advertising and from cold calls or walk-ins to the business. (Tr. 15, 34; Ex. 25).

Both Defendants and the loan officers appear to have intended an indefinite working relationship which is consistent with general at-will principles of the employee/employer relationship under Ohio law. Further, although the loan officers positions required some skill, many of the loan officers hired by FNL had no prior experience in mortgage sales and they were trained by the by senior loan officers also hired by the Defendants. (Tr. 183–186). The parties agree that the work performed by the loan officers is clearly an integral part of the Defendants' business, and that Defendants oversaw the loan officers compliance with RESPA and other industry regulations.

Possibly most telling, however, is Defendant Scherzer's testimony that a loan offi-

realities test limits the scope of the FLSA such that workers who are otherwise classified as employees may be considered independent contractors for purposes of the Act. Under the facts of *Rutherford,* however, the U.S. Supreme Court actually broadened the coverage of the FLSA by finding that workers otherwise classified as independent contractors could be considered employees for purposes of the FLSA.

cer may not work at two mortgage companies at the same time and that once a loan officer leaves a particular mortgage company, that loan officer's license is sent back to the State of Ohio until it can be transferred to a new broker company. (Tr. 373–374). Thus, the loan officers were not free to work for other companies while working at FNL, and their licensing was tied to their employment with FNL. Under the circumstances, it is clear to this Court that the loan officers working for the Defendants were economically dependent on FNL and, therefore, were employees and not independent contractors for purposes of the FLSA.

## 2. *Exemptions*

 There are exceptions to the minimum wage requirement which are enumerated under Section 13(a) of the FLSA. Exemptions under the Act are to be narrowly construed against the employer who asserts them. *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392, 80 S.Ct. 453, 4 L.Ed.2d 393 (1960). The employer bears the burden of proving that an exemption applies. *Walling v. General Industries Co.*, 330 U.S. 545, 548, 67 S.Ct. 883, 91 L.Ed. 1088 (1947); *Herman v. Palo Group Foster Home*, 183 F.3d 468, 472 (6th Cir. 1999). The employer must establish that the employee meets every aspect of the definition for an exempt employee. *Schaefer v. In. Mich. Power Co.*, 197 F.Supp.2d 935, 938 (W.D.Mich.2002)(citing *Corning Glass Works v. Brennan*, 417 U.S. 188, 196–97, 94 S.Ct. 2223, 41 L.Ed.2d 1 (1974)).

The only exception the Defendants are claiming is the "outside sales exception" established in 29 C.F.R. § 541.500(e). (See Post–Trial Brief of Defendants at 21; Tr. 395–396). Under the prior regulations, applicable to those claims which arose from August 2001 to August 23, 2004, an "outside salesman" was defined as an employee

(a) Who is employed for the purpose of and who is customarily and regularly engaged away from his employer's place or places of business in:

(1) Making sales within the meaning of section 3(k) of the Act, or

(2) Obtaining orders or contracts for services or for the use of facilities for which a consideration will be paid by the client or customer, and

(b) Whose hours of work of a nature other than that described in paragraph (a)(1) or (2) of this section do not exceed 20 percent of the hours worked in the workweek by nonexempt employees of the employer: Provided, That work performed incidental to and in conjunction with the employee's own outside sales or solicitations, including incidental deliveries and collections, shall not be regarded as nonexempt work.

29 C.F.R. § 541.5. Under the pre-August 23, 2004 regulations, there was a 20 percent tolerance for non-exempt work. 29 C.F.R. 541.500(b).

Under the new regulations effective August 23, 2004, the term "employee employed in the capacity of outside salesman" is defined as any employee whose "primary duty" is to make sales or obtain orders and "who is customarily and regularly engaged away from the employer's place or places of business in performing such primary duty." 29 C.F.R. § 541.500;69 F.R. 22267. "Customarily and regularly" has been defined as "a frequency that must be greater than occasional but which, of course, may be less than constant." 29 C.F. R. § 541.701; 69 F.R. 22272.

An outside salesperson is someone "who makes sales at the customer's place of business or, if selling door-to-door, at the customer's home. Outside sales does not include sales made by mail, telephone or the Internet unless such contact is used

merely as an adjunct to personal calls." 29 C.F.R. § 541.502. "Thus, any fixed site, whether home or office, used by a salesperson as a headquarters or for telephonic solicitation of sales is considered one of the employer's places of business...." 29 C.F.R. § 541.502; *see also Stevens v. Welcome Wagon* Intern, Inc., 261 F.Supp. 227, 231 (D.C.Pa.1966). "Inside sales, and other inside work ... is nonexempt." 29 C.F.R. § 541.02(a).

■ There is no question that the primary purpose of loan officers employed by FNL is to make sales or obtain orders or contract for services. The Defendants have argued that it is known and accepted in the industry that loan officers working for mortgage brokers are outside salespeople and that they work primarily on their own and away from the office. However, the great bulk of the evidence presented in this case indicates that the loan officers in this particular office were not customarily and regularly engaged in their work activities away from FNL's place of business. All of the Plaintiff's witnesses testified that they rarely if ever met a customer outside of the office. Most of their work was done from the office or from their own homes, through telephone and fax communications. (Tr. 15, 20–21, 34, 41, 44–45, 47, 55, 62, 81, 82, 84, 87, 88, 121, 122, 124, 144–147, 151–153, 154, 182). Although Ms. Scherzer testified that loan officers were often not present at the office, she had no knowledge of what they did outside the office and could not establish that they were working on outside sales when they were absent. (Tr. 341, 348). Ms. Scherzer, who was also a loan officer, even testified that she did not meet with clients outside the office. (Tr. 379–380). Defendants have failed to meet their burden of proving that FNL's loan officers were customarily and regularly engaged in outside sales. Therefore, the outside sales exemption does not apply to the loan officers at issue in this case.

## C. *Record keeping*

Section 11 (c) of the FLSA requires employers to "make, keep, and preserve" records of its employees including "wages, hours, and other conditions and practices of employment." Defendants have admitted that they did not make and keep records of hours worked by its loan officers. Further, First National Lending did not keep and preserve time records for all of its hourly employees. Defendants did not keep and preserve records of starting and ending dates for each employee.

■ When an employer fails to maintain records of hours worked as required by the FLSA, it is the employer's burden to refute the Plaintiffs estimate of hours worked when calculating back pay awards. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946)(superceded by statute on other grounds); *U.S. Dep't of Labor v. Cole Enterprises*, 62 F.3d 775 (6th Cir.1995).

> Where the employer's records are inaccurate or inadequate ... an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

*Mt. Clemens Pottery Co.*, 328 U.S. at 687–88, 66 S.Ct. 1187. An employer cannot complain that the damages calculations for FLSA violations are not exact when it did not make and keep records of the hours

worked. *Id.; Hodgson v. American Concrete Construction Co., Inc.,* 471 F.2d 1183 (6th Cir.1973), cert. denied, 412 U.S. 949, 93 S.Ct. 3007, 37 L.Ed.2d 1001 (1973).

Wage and Hour Investigator, Joann Lach, conducted an investigation of the Defendants' business. In 2003, she was given documents which allowed her to calculate back wages owed to the hourly employees for overtime violations between August 1, 2003 and August 2004. Defendants, however, could not provide her with time records for loan officers who worked during that same time period. In order to determine the amount of back wages owed to the loan officers, Ms. Lach had to seek out information through interviews and create reasonable inferences from the limited records available, including IRS W–4 forms, employment contracts, employee lists and personnel documents.

Defendant Lisa Scherzer told Ms. Lach that loan officers worked an average of 35 hours per week. (Tr. 207). Other employees of FNL testified that loan officers generally worked at least forty hours per week. (Tr. 26, 41, 90, 122, 148 and 157; Ex. 4). Ms. Lach calculated the wages due based on the more conservative estimate of 35 hours per week offered by Defendant Scherzer. Start dates were not always clear from the documents provided but Defendant Scherzer and other employees provided information that indicated employees generally worked between four and six weeks before closing their first loan and receiving their first paycheck. (Tr. 20, 43, 208, 232–233). Therefore, when starting dates were not present in an employee's personnel file, Ms. Lach calculated their start date, using the more conservative estimate of thirty days prior to their first loan closing.

Comparing the information obtained from the various documents and interviews, and accepting the more conservative number of work hours provided by the Defendant Lisa Scherzer, Ms. Lach calculated the minimum wage payments owed each of the loan officers based on an average thirty-five hour work week. Defendants offered no credible evidence to refute these calculations.

### D. *Liquidated Damages*

 Liquidated damages are to be assessed in an amount equal to back wages unless the employer can show that it acted in good faith and took affirmative steps to ascertain and comply with the requirements of the FLSA. 29 U.S.C. § 260(c); *Martin v. Indiana Michigan Power Co.,* 381 F.3d 574, 584 (6th Cir.2004). Liquidated damages are considered compensatory under the FLSA and are not punitive in nature. *Elwell v. Univ. Hospitals Home Care Serv.,* 276 F.3d 832, 840 (6th Cir.2002). The imposition of liquidated damages is presumed, and the employer's burden of showing it acted in good faith is substantial. *Martin v. Indiana Michigan Power Co.,* 381 F.3d at 584.

 The good faith standard under the FLSA is more stringent than it is in many other contexts. Even negligent, as opposed to willful mis-classification of an employee is enough to prevent the application of the good faith exception. *Id.* A showing of good faith includes a duty to investigate potential liability under the FLSA. *Reeves v. Int'l Tel. & Tel., Corp.,* 616 F.2d 1342, 1353 (5th Cir.1980), cert. denied, 449 U.S. 1077, 101 S.Ct. 857, 66 L.Ed.2d 800 (1981). Ignorance of the FLSA requirements is not a defense to liquidated damages. *Rogers v. Savings First Mortgage, LLC,* 362 F.Supp.2d 624, 638 (D.Md.2005).

 In this case, the Defendants have failed to establish that they acted in good faith. There is no evidence that they ever took any affirmative steps to determine the proper classification of their employees, or to comply with those standards

once they were known. Ms. Scherzer told hourly employees that she doesn't pay overtime. (Tr. 65). When overtime was requested, Ms. Scherzer never responded. (Tr. 71–72). Further there is no evidence that Defendants ever made any inquiry into whether loan officers were required to receive minimum wage. The only argument Defendants have offered in defense of this position is that it is "industry standard" to pay loan officers on a purely commission basis. Even if this is true, however, good faith cannot be established merely by conforming with industry standards. *Martin v. Cooper Elec. Supply Co.*, 940 F.2d 896, 910 (3d Cir.1991); *Brock v. Wilamowsky*, 833 F.2d 11, 19–20 (2d Cir. 1987); *Laffey v. Northwest Airlines, Inc.*, 567 F.2d 429, 465 (D.C.Cir.1976), cert. denied, 434 U.S. 1086, 98 S.Ct. 1281, 55 L.Ed.2d 792 (1978); *Rogers v. Savings First Mortgage, LLC*, 362 F.Supp.2d at 638.

Further, after the Dept. of Labor completed its investigation and informed Ms. Scherzer that FNL was not meeting the FLSA requirements, Ms. Scherzer told the investigator, Joann Lach that she would comply with the Act. Nonetheless, she failed to do so. Even after the investigation, FNL failed to keep proper time records and failed to regularly pay minimum wage to loan officers who were not yet due to receive a commission check. There is no evidence, that the Defendants have acted in good faith, as it is defined under the FLSA, and, therefore, liquidated damages are warranted.

### FINDINGS OF FACT/CONCLUSIONS OF LAW

The Court makes the following findings of fact and conclusions of law based upon the evidence presented at trial, and the parties joint stipulations of fact (ECF # 44):

1. Defendant First National Lending Corporation ("FNL"), is an Ohio corporation having its principal office and place of business in Middleburg Hts., Ohio, and is subject to the jurisdiction of this court. (Joint Stipulation ECF # 44).

2. Defendant FNL is, and at all relevant times was, engaged in soliciting mortgage loan applications at that address. (Joint Stipulation ECF # 44).

3. Defendant Lisa M. Scherzer, resides in Middleburg Ohio and is subject to the jurisdiction of this court. (Joint Stipulation ECF # 44).

4. Defendant Lisa M. Scherzer is the 100% owner, president, and operations manager of FNL. She has management responsibility for FNL's pay and record keeping practices, and she makes decisions relating to compensation, timekeeping policies, and the day-to-day operations and administration of FNL. (Joint Stipulation ECF # 44).

5. Defendant Lisa M. Scherzer's actions, as addressed in this case, were taken directly or indirectly in furtherance of FNL's interests, and as an employer within the meaning of the FLSA. (Joint Stipulation ECF # 44).

6. Defendants' employees were and are regularly engaged in receiving and placing telephone calls outside the state of Ohio and were and are regularly engaged in acquiring credit reports, loan applications and other documents from outside the state of Ohio. (Joint Stipulation ECF # 44).

7. Defendants are, and at all relevant times were, engaged in the performance of related activities for a common business purpose. (Joint Stipulation ECF # 44).

8. Since the year ending December 31, 2002, the Defendants have had an annual dollar volume in excess of $500,000 exclusive of excise taxes at the retail level and

have had employees engaged in commerce or in the production of goods for commerce, including employees handling, selling, or otherwise working on goods or materials that have been produced for or moved in commerce. (Joint Stipulation ECF # 44).

9. The Defendants' employees have been and are "engaged in interstate commerce or in the production of goods for commerce" within the meaning of the FLSA.

10. The Defendants are an "enterprise" within the meaning of Section 3(r) of the FLSA.

11. The Defendants are an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of Section 3(s)(1)(A) of the FLSA.

12. Beginning in August of 2003, Wage and Hour Investigator Joann Lach conducted an investigation of Defendants' business under the FLSA. (Joint Stipulation ECF # 44).

13. At various times from August 1, 2001 to present, Defendants have employed loan officers, loan processors, telemarketers, receptionists, office assistants and clerical workers. (Joint Stipulation ECF # 44).

14. Defendants did not keep and preserve records for all of their hourly employees, including starting and ending dates of employment. (Ex. 12 and 13).

15. Defendants' telemarketers called potential customers to see if they would be interested in a mortgage or in refinancing their homes. The telemarketers were paid on an hourly basis. (Joint Stipulation ECF # 44).

16. Defendants' receptionists greeted individuals entering FNL's office, sent and distributed faxes, and answered the phones. They passed potential customer calls on to loan officers. Receptionists were paid on an hourly basis. (Joint Stipulation ECF # 44).

17. Defendants' clerical workers copied documents, filled the copier when the paper was low and generally assisted the loan officers. Clerical workers were paid on an hourly basis. (Joint Stipulation ECF # 44).

18. Receptionists, telemarketers, and clerical workers (as well as some loan processors) were hourly employees and were not paid one and one-half their hourly rate of pay for hours worked over forty in a work week. (Tr. 23, 65, 72, 266–78; Ex. 1, 2, 3 and 15).

19. Defendants' loan officers gathered personal information from customers, completed loan applications for customers, gathered employment documents from customers, ran credit reports of customers and performed other tasks. (Joint Stipulation ECF # 44).

20. The primary purpose of loan officers employed by FNL was and is to make sales or obtain orders or contract for services.

21. Defendants' loan officers were paid only on commission. They were not paid a salary, an hourly rate, or on a fee basis. (Joint Stipulation ECF # 44).

22. Loan Officers employed by the Defendants do not qualify for exempt status under the executive, administrative or professional exemptions because they are not paid on a "salary or fee basis." 29 C.F.R. Part 541.1(f), 541.2(e)(1), and 541.3(e).

23. Defendants did not make and keep records of hours worked by loan officers. (Joint Stipulation ECF # 44).

24. Defendants' loan officers were paid only when they closed a loan and that loan funded (i.e. the title company actually sent the loan money to FNL). (Joint Stipulation ECF # 44). If they did not have a

loan that funded during a particular pay period, they were paid nothing for that time period. (Tr. At 208–209).

25. Loan officers worked primarily in FNL's offices and seldom, if ever, met customers outside the office. (Tr. 20, 44–45, 47, 62, 84, 87, 124, 146–147 and 153).

26. Loan officers were encouraged to meet with customers at FNL's offices, when a meeting was necessary. (Tr. 21, 88, 141 and 154). They were not required, or encouraged to meet customers outside of the office. (Tr. 21, 61–62, 87, and 182).

27. Defendants placed ads in the yellow pages, newspapers and on the radio, and FNL paid for those ads. (Tr. 374–376).

28. Many of the leads the loan officers received came from advertising placed and paid for by FNL and from cold calls or walk-ins to the business. (Tr. 15, 34; Ex. 25).

29. Senior loan officers hired by FNL trained junior loan officers hired by FNL. (Tr. 183–186).

30. A loan officer may not work at two mortgage companies at the same time and once a loan officer leaves a particular mortgage company, that loan officer's license is sent back to the State of Ohio until it can be transferred to a new broker company. (Tr. 373–374).

31. The loan officers working for the Defendants were economically dependent on FNL and, therefore, were employees and not independent contractors for purposes of the FLSA.

32. Loan officers employed by the Defendants were not customarily and regularly engaged in the performance of their primary duty away from the employer's place of business. 29 C.F.R. 541.701; 69 F.R. 22272; 29 C.F.R. 541.107(b)(pre-August 23, 2004 regulations).

33. Loan Officers employed by the Defendants do not qualify for exempt status under the outside sales exemption under either the old regulations (applicable from August 2001 to August 23, 2004) or the new regulations (effective August 23, 2004). 29 C.F.R. 541.5; (pre-August 23, 2004 regulations); 29 C.F.R. 541.500(b); 29 C.F.R. 541.500; 69 F.R. 22267.

34. Loan officers worked an average of 35 hours per week. (Tr. 235, 239).

35. Loan officers generally worked a minimum of two to three months. (Tr. 234).

36. It generally took 30 to 60 days for a loan officer to receive his or her first commission check. (Tr. 233).

37. Absent any indication of a termination date, it is reasonable to assume that a loan officer had terminated employment within one pay period of receiving their last pay check. (Tr. 233).[3]

38. Defendants generally paid their employees on the 1st and 15th or 1st and 16th days of the month. (Joint Stipulation ECF # 44).

39. Heather Abdelsayed was an hourly employee for FNL and is owed $76.00 in overtime pay. (Tr. 267–270; Ex. 15, 24).

40. Irene Scherzer is a loan processor for FNL, and was paid hourly. She is owed $502.50 in overtime and back for minimum wage violations. (Tr. 270–272; Ex. 15, 24).

---

3. Defendants claim that there was clear testimony by Roger Citino that the industry standard is to leave immediately upon the event of receiving the last pay check. Mr. Citino's testimony, however, does not support this conclusion. Mr. Citino testified that the standard in the industry is leave without notice. (Tr. 199). He never testified to when in the pay cycle employees tended to leave, only that they generally did not give prior notice of their intentions.

41. Christine Smith was an hourly employee for FNL and is owed $48.00 in overtime pay. (Tr. 272–273; Ex. 15, 24).

42. Victoria Terifaj was an hourly employee for FNL and is owed $180.23 in overtime pay. (Tr. 274–277Ex.15, 24).

43. Kevin Antal was a loan officer for FNL and is owed $1951.15 in back wages. (Tr. 236–245; Ex. 23, 24).

44. James Arron was a loan officer for FNL and is owed $1,730.40 in back wages. (Tr. 245–246; Ex. 17, 24).

45. Tim Baker was a loan officer for FNL and is owed $757.05 in back wages (Tr. 247–249; Ex. 18, 24).

46. Kenneth Barber was a loan officer for FNL and is owed $468.65 in back wages. (Ex 23, 24).

47. Lisa Berekla was a loan officer for FNL and is owed $1,684.00 in back wages. (Ex. 23, 24).

48. Dan Bartos was a loan officer for FNL and is owed $1,982.75 in back wages. (Ex. 23, 24).

49. John Behrik was a loan officer for FNL and is owed $5,371.45 in back wages (Ex. 23, 24).

50. Gary Bise was a loan officer for FNL and is owed $1,514.10 in back wages (Ex. 23, 24).

51. Dan Bostwick was a loan officer for FNL and is owed $1,061.75 in back wages. (Ex. 23, 24).

52. Douglas Carson was a loan officer for FNL and is owed $1,189.65 in back wages. (Tr. 249–Ex.24).

53. Rebecca Castelli was a loan officer for FNL and is owed $1,982.75 in back wages. (Tr. 170; Ex. 23, 24).

54. Roger Citino was a loan officer for FNL and is owed $2,306.50 in back wages. (Tr. 251–254; Ex. 20, 24).

55. Kevin Collins was a loan officer at FNL and is owed $396.55 in back wages. (Ex. 23, 24).

56. Jeffrey Dany was a loan officer for FNL and is owed $1,153.60 in back wages (Ex. 23, 24).

57. Timothy DeJohn was a loan officer for FNL and is owed $576.80 in back wages (Ex. 23, 24).

58. Julie Dickard was a loan officer for FNL and is owed $648.90 in back wages (Ex. 23, 24).

59. Leisa Diller was a loan officer for FNL and is owed $1,669.85 in back wages (Ex. 23, 24).

60. Marta Dlugokecki was a loan officer for FNL and is owed $1,530.40 in back wages (Ex. 23, 24).

61. Matthew Dunlap was a loan officer for FNL and is owed $1,802.50 in back wages (Tr. 263–264; Ex. 23, 24).

62. Josette Feller was a loan officer for FNL and is owed $1,874.60 in back wages (Ex. 23, 24).

63. Sarah Felming–Sadona was a loan officer for FNL and is owed $757.05 in back wages (Ex. 23, 24).

64. Steven Godbolt was a loan officer for FNL and is owed $413.31 in back wages (Ex. 23, 24).

65. Cynthia Gore was a loan officer for FNL and is owed $829.15 in back wages (Ex. 23, 24).

66. Thomas Griesmar was a loan officer for FNL and is owed $579.55 in back wages (Ex. 23, 24).

67. Travis Helms was a loan officer for FNL and is owed $1,117.55 in back wages (Ex. 23, 24).

68. Charles Howard was a loan officer for FNL and is owed $936.15 in back wages (Ex. 23, 24).

69. Crystal Kennedy was a loan officer for FNL and is owed $1,117.55 in back wages (Ex. 23, 24).

70. Kevin Kramer was a loan officer for FNL and is owed $1,622.25 in back wages (Ex. 23, 24).

71. Kareem Lanier was a loan officer for FNL and is owed $1,333.85 in back wages (Ex. 23, 24).

72. Joel LaRiccia was a loan officer for FNL and is owed $381.00 in back wages. (Ex. 23, 24).

73. Vanessa Latimer was a loan officer for FNL and is owed $559.05 in back wages (Ex. 23, 24).

74. Craig Lutsch was a loan officer for FNL and is owed $2,018.80 in back wages (Ex. 23, 24).

75. Darren Mancuso was a loan officer for FNL and is owed $1,326.65 in back wages (Ex. 23, 24).

76. Greg Mitchell was a loan officer for FNL and is owed $793.10 in back wages (Ex. 23, 24).

77. Sonnja Molton was a loan officer for FNL and is owed $1,499.80 in back wages (Ex. 23, 24).

78. Jim Morey was a loan officer for FNL and is owed $1,153.60 in back wages (Ex. 23, 24).

79. Bill Morrow was a loan officer for FNL and is owed $1,153.60 in back wages (Ex. 23, 24).

80. Mervat Najjar was a loan officer for FNL and is owed $1,045.45 in back wages (Ex. 23, 24).

81. Lawrence Palomino was a loan officer for FNL and is owed $738.15 in back wages (Ex. 23, 24).

82. James Parhamovich was a loan officer for FNL and is owed $144.20 in back wages (Ex. 23, 24).

83. James Pauley was a loan officer for FNL and is owed $937.30 in back wages (Ex. 23, 24).

84. Roberta Price was a loan officer for FNL and is owed $1,735.90 in back wages (Ex. 23, 24).

85. Randall Renner was a loan officer for FNL and is owed $36.05 in back wages (Ex. 23, 24).

86. Greg Repasky was a loan officer for FNL and is owed $2,235.10 in back wages (Ex. 23, 24).

87. Stephanie Russell was a loan officer for FNL and is owed $2,056.10 in back wages (Ex. 23, 24).

88. Robyn Samara was a loan officer for FNL and is owed $3,172.40 in back wages (Ex. 23, 24).

89. Paul Scherzer was a loan officer for FNL and is owed $3,280.55 in back wages (Ex. 23, 24).

90. Sharon Schmitz was a loan officer for FNL and is owed $2,235.10 in back wages (Ex. 23, 24).

91. Barbara Schwartz was a loan officer for FNL and is owed $1,117.55 in back wages (Ex. 23, 24).

92. Rosemary Shell was a loan officer for FNL and is owed $648.90 in back wages (Tr. 264–266; Ex. 23, 24).

93. Timothy Sherman was a loan officer for FNL and is owed $3,641.05 in back wages (Ex. 23, 24).

94. Edward W. Smith was a loan officer for FNL and is owed $360.50 in back wages (Ex. 23, 24).

95. Ronald Stevenson was a loan officer for FNL and is owed $1,081.50 in back wages (Ex. 23, 24).

96. Heather Szuhy was a loan officer for FNL and is owed $396.55 in back wages (Ex. 23, 24).

97. Scott Thomas was a loan officer for FNL and is owed $721.00 in back wages (Ex. 23, 24).

98. George Tomasch was a loan officer for FNL and is owed $1,838.55 in back wages (Ex. 23, 24).

99. Maria Trocano was a loan officer for FNL and is owed $1,266.20 in back wages (Ex. 23, 24).

100. Terri Tutten was a loan officer for FNL and is owed $1,730.40 in back wages (Ex. 23, 24).

101. John Underwood was a loan officer for FNL and is owed $2,021.15 in back wages (Ex. 23, 24).

102. Debra J. Ustar was a loan officer for FNL and is owed $1,911.15 in back wages (Ex. 23, 24).

103. Daniel Vargas was a loan officer for FNL and is owed $908.19 in back wages (Ex. 23, 24).

104. Regina Weakley was a loan officer for FNL and is owed $404.39 in back wages (Ex. 23, 24).

105. Shirley Weber was a loan officer for FNL and is owed $144.20 in back wages (Tr. 255–256; Ex. 21, 24).

106. Vikki Wilson was a loan officer for FNL and is owed $1,189.65 in back wages (Ex. 23, 24).

107. Caesar Wright was a loan officer for FNL and is owed $4,053.80 in back wages (Tr. 257–259; Ex. 22, 24).

108. Caryn Zickafoose was a loan officer for FNL and is owed $1,946.70 in back wages (Ex. 23, 24).

109. The employees represented in this action are entitled to liquidated damages in an amount equal to back wages.

## CONCLUSION

For the foregoing reasons this Court finds:

(1) in favor of Plaintiff and against Defendants First National Lending Corporation and Lisa M. Scherzer on Plaintiff's claim pursuant to Sections 6 and 15(a)(2) of the Fair Labor Standards Act of 1938, as amended (52 Stat. 1060, 29 U.S.C. 201, et seq.), for failure to pay wages at rate equal to or more than five dollars and fifteen cents per hour, for a period since August 1, 2001;

(2) in favor of Plaintiff and against Defendants First National Lending Corporation and Lisa M. Scherzer on Plaintiff's claim pursuant to Sections 7 and 15(a)(2) of the Fair Labor Standards Act of 1938, as amended (52 Stat. 1060, 29 U.S.C. 201, et seq.), for failure to compensate employees at rates not less than one and one-half times the regular rate at which they were employed for workweeks longer than forty hours, for a period from August 1, 2001 through December 27, 2004;

(3) in favor of Plaintiff and against Defendants First National Lending Corporation and Lisa M. Scherzer on Plaintiff's claim pursuant to Sections 11(c) and 15(a)(5) of the Fair Labor Standards Act of 1938, as amended (52 Stat. 1060, 29 U.S.C. 201, et seq.), and 29 C.F.R. 516, for failure to make, keep and preserve adequate and accurate records of their employees and of the wages, hours and other conditions and practices of employment maintained by them for a period from August 1, 2001 to December 27, 2004.

Accordingly, pursuant to Section 17 of the Fair Labor Standards Act, Defendants are ORDERED to refrain from violating Sections 6 and 15(a)(2), Sections 7 and 15(a)(2), and Sections 11(c) and 15(a)(5) of the Fair Labor Standards Act of 1938, as amended (52 Stat. 1060, 29 U.S.C. 201, et seq.), as well as the provisions of 29 C.F.R. 516. Further, Defendants are ordered to pay a total of $ 186,099.74, in back wages and liquidated damages plus 8% interest

from the time of the violations. Costs of this action are assessed to the Defendants.

IT IS SO ORDERED.