# IN THE SUPREME COURT OF CALIFORNIA

LAURANCE ILOFF,

Plaintiff and Appellant,

v.

CYNTHIA LAPAILLE et al.,

Defendants and Respondents.

S275848

First Appellate District, Division One

A163504

Humboldt County Superior Court

CV2000529

---

August 21, 2025

Justice Groban authored the opinion of the Court, in which Chief Justice Guerrero and Justices Corrigan, Liu, Kruger, Jenkins, and Evans concurred.

---

ILOFF v. LaPAILLE

S275848

Opinion of the Court by Groban, J.

This case addresses two issues concerning the rights of California workers whose employers fail to pay them the minimum wage or provide them paid sick leave benefits. The first issue relates to the good faith defense to the default rule that employees who prove minimum wage violations are entitled to liquidated damages. (Labor Code, § 1194.2.)[1] We hold that to establish the good faith defense, an employer must show that it made a reasonable attempt to determine the requirements of the law governing minimum wages; proof that the employer was ignorant of the law is insufficient. The second issue relates to the process for raising claims under the Healthy Workplaces, Healthy Families Act of 2014 (§ 245 et seq.; the "Paid Sick Leave law"). Specifically, we must determine whether a court may consider a Paid Sick Leave law claim that an employee raises in the context of their employer's appeal to the superior court of a Labor Commissioner ruling. (§ 98.2, subd. (a).) We hold that a court may do so. The Court of Appeal reached the opposite conclusion on both issues, so we reverse.

**BACKGROUND**

Laurance Iloff lived and worked in an unincorporated area of Humboldt County known as Bridgeville, on property owned

_____

[1] All further statutory references are to the Labor Code unless otherwise specified.

1

by Bridgeville Properties, Inc. and managed by Cynthia LaPaille (together, "employers"). Iloff's employers rented out the property, which includes small houses, cabins, and other structures. For several years, Iloff performed maintenance on Bridgeville's structures, grounds, and water system, and LaPaille provided him instructions, directions, and approvals in relation to this work. Under an informal arrangement, Iloff's employers allowed him to live rent-free in one of the houses but did not provide him any other benefits or compensation for his services.

After his employers terminated this arrangement, Iloff filed claims against them with the Labor Commissioner, initiating a process for adjudicating wage claims informally known as "the Berman process." (*OTO, L.L.C. v. Kho* (2019) 8 Cal.5th 111, 122 (*Kho*); §§ 98–98.6.) The employers argued that Iloff was an independent contractor, but the Labor Commissioner determined that he was an employee and as such, was entitled to unpaid wages, liquidated damages, penalties, and interest. (See § 98.1, subd. (a) [providing for Labor Commissioner's "order, decision, or award" after Berman hearing].)

The employers appealed, seeking de novo review of the Labor Commissioner's ruling in the superior court. (See § 98.2, subd. (a) ["[P]arties may seek review by filing an appeal to the superior court, where the appeal shall be heard de novo"].) In response, Iloff — now represented by an attorney from the Labor Commissioner's office — filed a notice of claims. (See § 98.4, subd. (a) [providing for employees' representation by Labor Commissioner in Berman appeals].) In this notice, Iloff reasserted the wage claims he had raised before the Labor Commissioner and added new claims, including a claim for

penalties under the Paid Sick Leave law. (See *Murphy v. Kenneth Cole Productions*, Inc. (2007) 40 Cal.4th 1094, 1120 (*Murphy*) [trial court has discretion to allow employee to raise additional claims in response to employer's Berman appeal].)

Following a bench trial, the superior court found that Iloff was an employee. Applying the framework set out in *Dynamex Operations West, Inc. v. Superior Court* (2018) 4 Cal.5th 903, the court reasoned that Iloff was properly classified as an employee, rather than an independent contractor, because he was not "free from [the employers'] control and direction" and he performed work that was within the "usual course" of their business. (*Id.* at p. 964.) The court ruled that Iloff was entitled to unpaid wages, penalties, and interest.

On the two issues we address today, however, the superior court ruled in favor of the employers. First, the court ruled that Iloff was not entitled to liquidated damages because his employers had acted in "good faith" in not paying him and had "reasonable grounds for believing" they were complying with the law governing minimum wages. (§ 1194.2, subd. (b).) The court based this ruling on its findings that the employers and Iloff intended and expected Iloff to perform his services in exchange for free rent and that neither he nor the employers understood or believed, at any time before his termination, that he would be paid wages or treated as an employee. Second, the court rejected Iloff's claim for penalties under the Paid Sick Leave law, concluding that the statute did not authorize Iloff to seek those penalties in the context of the employers' Berman appeal. (§§ 246, subd. (i), 248.5, subds. (a) & (b).)

Iloff appealed, and the Court of Appeal affirmed in part and reversed in part, affirming the trial court's judgment in the employers' favor on the liquidated damages and Paid Sick Leave

law issues. (*Seviour-Iloff v. LaPaille* (2022) 80 Cal.App.5th 427, 447–451 (*Seviour-Iloff*).) We granted review to address these two issues.[2]

## DISCUSSION

To resolve both issues, we interpret Labor Code provisions without deference to the lower courts' interpretations. (See *Augustus v. ABM Security Services, Inc.* (2016) 2 Cal.5th 257, 262 (*Augustus*) [applying de novo review to Court of Appeal's interpretation of Labor Code provisions].) "When interpreting any statute, our goal is to determine the Legislature's intent and give effect to the statute's purpose. (*Brennon B. v. Superior Court* (2022) 13 Cal.5th 662, 673.) We begin with the language

---

[2] After Iloff submitted his opening brief in this court, the employers timely submitted a short answer brief in which they declined to respond to Iloff's arguments because they believed that doing so would "engender further litigation." The employers requested, however, that we withhold jurisdiction from the lower courts to decide a motion that they anticipate Iloff will file on remand seeking attorney's fees on behalf of the Labor Commissioner's office, which has represented Iloff throughout the course of his appeals. (See § 98.2, subd. (c) [directing superior court to award costs and reasonable attorney's fees related to an appeal of the Labor Commissioner's ruling if the court awards the employee "an amount greater than zero"].) The employers argued that they should not have to pay fees related to Iloff's appeal of the superior court's ruling, which they anticipate will exceed the liquidated damages and penalties at issue in the appeal. We issued an order construing this filing as a request to designate the employers' brief in the Court of Appeal as their brief in this court. We now deny their request that we withhold jurisdiction from the lower courts to hear any motion for attorney's fees related to the appeals in this case. If Iloff files the anticipated fee motion on remand, the employers may make their arguments in opposition to that motion.

of the relevant provision, considering it in its statutory context. (*Ibid*.) . . . If the statutory language is unclear, we may look to legislative history and public policy as aids in determining how best to give effect to Legislative intent." (*Quach v. California Commerce Club, Inc.* (2024) 16 Cal.5th 562, 577.) When interpreting the Labor Code, we liberally construe its provisions to give effect to the Legislature's intent to protect employees from abuse and to promote safe and healthy working conditions. (*Augustus* at p. 262.)

## A. To Prove the Good Faith Defense to Liquidated Damages, an Employer Must Show It Made a Reasonable Attempt To Determine the Requirements of Minimum Wage Law

We first address whether an employer may prove the "good faith" defense to liquidated damages without showing that it attempted to determine the requirements of the law governing minimum wages. Here, the trial court's conclusion that the employers had established the good faith defense was based on its finding that the employers and Iloff intended and expected that Iloff would perform his services in exchange for free rent and that he would not be paid wages or otherwise treated as an employee. The employers did not claim in the trial court that they had attempted to determine what the law required at any point during Iloff's employment and they did not present any evidence suggesting that they had made such an attempt. Accordingly, our resolution of this issue turns on whether, to establish the good faith defense, an employer must show that it made an attempt to determine what the law required. We hold that an employer must make this showing. While the form and extent of the required attempt is context dependent, the burden is on the employer to show it made an attempt to determine

what the law required that was reasonable under the circumstances and a good faith effort to comply with the requirements of the law. Application of this rule here is relatively straightforward: Because Iloff's employers did not show they made *any* attempt to determine what the law required and comply with those requirements, they did not prove the good faith defense.

The Labor Code's default rule for liquidated damages in minimum wage actions, found in section 1194.2, subdivision (a), mandates an award: When a court finds an employee is entitled to unpaid minimum wages, as the superior court found Iloff to be, the court must award the employee "liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon." Subdivision (b) of the same section establishes the "good faith" defense to this otherwise mandatory award. (§ 1194.2, subd. (b).) The burden is on the employer to establish the defense by proving that "the act or omission giving rise to the action was in good faith and that the employer had reasonable grounds for believing that the act or omission was not a violation." (*Ibid.*) If the employer carries this burden, the provision authorizes the court "as a matter of discretion" to deny a request for liquidated damages or to order less than the full amount to which the employee would otherwise be entitled. (*Ibid.*)

The provision's language does not directly answer the question whether, to establish the good faith defense, an employer must show it attempted to determine the requirements of the law governing minimum wages. Statutory context, however, suggests that the provision is best read as requiring the employer to make such a showing. The provision immediately preceding the liquidated damages provision

specifies that an employee who has received less than the minimum wage is entitled to recover "the unpaid balance of the full amount of this minimum wage," together with interest, attorney's fees and costs, and to do so "[n]otwithstanding any agreement to work for a lesser wage." (§ 1194, subd. (a).) When read in conjunction with the default rule mandating an award of liquidated damages whenever a minimum wage violation has been established, this language suggests that the Legislature intended for employers to be liable for liquidated damages even when their employees have agreed to work for less than the minimum wage. It would be contrary to this apparent intent to read the good faith defense provision as allowing courts to relieve an employer of liability for liquidated damages without showing that it had made a reasonable attempt to determine the requirements of the law governing minimum wages and a good faith effort to comply with it.

The policy concerns reflected in the legislative history of the liquidated damages provision suggest that the Legislature intended to require employers asserting the good faith defense to show that they had made a reasonable attempt to determine the requirements of the law governing minimum wages. The liquidated damages provision and corresponding good faith defense were enacted as part of a bill that expanded the Labor Commissioner's authority to prosecute minimum wage violations and provided for awards of interest and attorney's fees to employees seeking to recover unpaid minimum wages through private actions. (Legis. Counsel's Dig., Sen. Bill No. 955 (1990–1991 Reg. Sess.).) In enacting this bill, the Legislature sought to promote more effective enforcement of minimum wage laws by the state and by employees themselves. (See, e.g., Assem. 3d reading analysis of Sen. Bill No. 955 (1991–1992 Reg.

Sess.) as amended Sept 10, 1991, at pp. 1–2; Sen. Rules Com., Off. of Sen. Floor Analyses, Rep. on Sen. Bill No. 955 (1991–1992 Reg. Sess.) as amended Sept 10, 1991, at p. 2.)  The bill's author and sponsors considered the liquidated damages provision a needed "disincentive[] to [the] violation of minimum wage laws" and a tool for promoting private enforcement.  (Sen. Rules Com., Off. of Sen. Floor Analyses, Rep. on Sen. Bill No. 955 (1991–1992 Reg. Sess.) as amended Sept 10, 1991, at p. 2.)  Supporting the bill, the Labor Commissioner observed that making liquidated damages available would assist the state "in enforcing minimum wages for employees" and would deter employers from violating minimum wage law.  (Cal. Dept. of Industrial Relations, Enrolled Bill Rep. on Sen. Bill No. 955 (1991–1992 Reg. Sess.) Sept. 19, 1991, at pp. 2–3.)  Liquidated damages would be much less effective as an enforcement tool and a means of deterring minimum wage violations if an employer could evade them merely by showing that it was ignorant of the law.  It would be contrary to the Legislature's intent to permit an employer that had not made a reasonable attempt to determine the requirements of the law governing minimum wages to invoke its ignorance in support of the defense.

Our understanding of the Legislature's intent finds further support in documents in the legislative history reflecting that the good faith defense provision was modeled on a similar provision in the Fair Labor Standards Act (FLSA, 29 U.S.C. § 201, et seq.).  (See Assem. 3d reading analysis of Sen. Bill No. 955 (1991–1992 Reg. Sess.) as amended Sept 10, 1991, at p. 2 ["Proponents point out that the provisions pertaining to employers who act in good faith conform to language in the Federal Fair Labor Standards Act"]; Sen. Rules Com., Off. of Sen. Floor Analyses, Rep. on Sen. Bill No. 955 (1991–1992 Reg.

Sess.) as amended Sept 10, 1991, at p. 2 [same].) Under both statutes, the default rule is that employers found liable for "unpaid minimum wages" are also liable for "an additional equal amount as liquidated damages." (29 U.S.C. § 216(b); see § 1194.2, subd. (a).) The language of the Labor Code good faith defense provision mirrors the language of the FLSA provision, which similarly permits a court to decline to award liquidated damages or reduce the amount of the award only if the employer shows "that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation" of the FLSA. (29 U.S.C. § 260.) The Labor Code provision, like the FLSA provision, thus places "the 'difficult' burden" of proving the good faith defense on the employer, " 'with double damages being the norm and single damages the exception.' " (*Alvarez v. IBP, Inc.* (9th Cir. 2003) 339 F.3d 894, 910 (*Alvarez*).)

Since before the enactment of the Labor Code provision, federal courts have interpreted the FLSA good faith defense provision as requiring employers to show that they "had reasonable grounds for believing that [they] did not violate the Act" and precluding them from making this showing based on "[a]n employer's ignorance of the Act or its requirements." (*Sinclair v. Automobile Club of Oklahoma, Inc.* (10th Cir. 1984) 733 F.2d 726, 730; see also *Marshall v. Brunner* (3d Cir. 1982) 668 F.2d 748, 753 (*Marshall*) ["an employer may not rely on ignorance alone" to establish it had reasonable grounds for believing it had complied with the FLSA]; *Barcellona v. Tiffany English Pub, Inc.* (5th Cir. 1979) 597 F.2d 464, 468–469 [same]; *Williams v. Tri-County Growers, Inc.* (3d Cir. 1984) 747 F.2d 121, 129 [same].) Federal courts required an employer to show it had investigated the FLSA's requirements and rejected good

faith defenses premised on an employee's acquiescence to an employer's unlawful failure to pay the minimum wage. (See, e.g., *Barcellona*, at p. 469 ["[G]ood faith requires some duty to investigate potential liability under the FLSA"]; *Williams*, at p. 129 ["The fact that an employer has broken the law for a long time without complaints from employees does not demonstrate the requisite good faith required by the statute"].)

In the three decades since the enactment of the Labor Code provision, federal courts have continued to interpret the FLSA good faith defense provision to require the employer to demonstrate that it took "active steps to ascertain the dictates of the FLSA" and "act[ed] to comply with them." (*Herman v. RSR Security Services Ltd.* (2d Cir. 1999) 172 F.3d 132, 142.) Federal courts have held that a finding that the parties mutually agreed to a compensation arrangement that violates minimum wage laws is insufficient to prove the FLSA good faith defense. (*Local 246 Utility Workers Union of America v. Southern California Edison Co.* (9th Cir. 1996) 83 F.3d 292, 298.) Courts have also concluded that an employer's arguments that the applicable legal requirements are subject to dispute "do not constitute evidence of taking the steps necessary to ensure FLSA compliance." (*Alvarez*, *supra*, 339 F.3d at p. 910; see *Chao v. First Nat. Lending Corp.* (N.D. Ohio 2006) 516 F.Supp.2d 895, 902–903 (*Chao*) [rejecting good faith defense in misclassification case because employers did not take active steps to determine whether they were complying with FLSA]; *Gustafson v. Bell Atlantic Corp.* (S.D.N.Y. 2001) 171 F.Supp.2d 311, 326–327 (*Gustafson*) [same].) These decisions are consistent with the Legislature's intent in enacting the Labor Code provision — as evidenced in the provision's language, statutory context, and legislative history — and so are helpful in discerning the

provision's reach. (See *Raines v. U.S. Healthworks Medical Group* (2023) 15 Cal.5th 268, 282 [observing that "federal court interpretations of federal laws that use similar language" may be "helpful in interpreting the reach of" California statutes].)

In rejecting Iloff's reliance on federal cases construing the FLSA provision, the Court of Appeal observed that there are "important differences" in the provisions' purposes. (*Seviour-Iloff, supra*, 80 Cal.App.5th at p. 447.) Specifically, it noted that prejudgment interest is not available for minimum wage violations under the FLSA but is available under the Labor Code. (*Ibid*.) Based on this difference, the court concluded that the purpose of liquidated damages under the Labor Code is to "serve as a penalty," by contrast to the FLSA provision's purpose of "compensat[ing] for delayed wages." (*Id*. at pp. 447–448.) The court then reasoned that because the two provisions have distinct purposes, cases interpreting the FLSA provision are not instructive. (*Id*. at pp. 448–449.)

We disagree. Liquidated damages undoubtedly may serve as a means of punishing and deterring minimum wage violations as well as a mechanism for compensating employees. As we have noted, "[t]he 'liquidated damages' allowed in section 1194.2 are in effect a penalty equal to the amount of unpaid minimum wages." (*Martinez v. Combs* (2010) 49 Cal.4th 35, 48, fn. 8.) But liquidated damages under the Labor Code, like those under the FLSA provision, are also truly "damages." (§ 1194.2, subd. (a).) Under both provisions, they are paid to the employees and serve to compensate them for damages indirectly caused by minimum wage violations that are otherwise "too obscure and difficult of proof for estimate." (*Overnight Motor Transportation*

*Co. v. Missel* (1942) 316 U.S. 572, 583–584.)[3]  The Labor Code provides many employee protections that extend beyond the baseline protections provided by the FLSA.  (See *Mendiola v. CPS Security Solutions, Inc.* (2015) 60 Cal.4th 833, 843 ["Federal regulations provide a level of employee protection that a state may not derogate.  Nevertheless, California is free to offer greater protection"].)  That the Labor Code makes available prejudgment interest in addition to liquidated damages is just another instance of the Legislature providing a remedy for a Labor Code violation that is more extensive than the remedy for a similar FLSA violation.  It does not mean that the Legislature intended the Labor Code's good faith defense provision to apply more broadly than the FLSA provision on which it was modeled.

Noting that the good faith defense provision requires an employer to demonstrate it acted in good faith " 'to the satisfaction of the court,' " the Court of Appeal characterized the provision as "giving the trial court considerable latitude to

_____

[3] As Iloff explains, such damages may result from the impacts on the health and well-being of low-wage workers and their family members caused by decreased ability to pay for food, shelter, utilities, transportation, health care, childcare, and other necessities — losses that are difficult to prove and for which an award of prejudgment interest does not compensate the employee.  (See Gerstein, *How district attorneys and state attorneys general are fighting workplace abuses: An introduction to criminal prosecutions of wage theft and other employer crimes against workers* (May 17, 2021) Economic Policy Inst., pp. 9–10; Minkler et al., *Wage Theft as a Neglected Public Health Problem: An Overview and Case Study from San Francisco's Chinatown District* (June 2014) American Journal of Public Health vol. 104, No. 6, p. 1011; Santiago et al., *Health Impact Assessment of The Proposed Los Angeles Wage Theft Ordinance* 26–29 (June 2014) Human Impact Partners, pp. 7–8.)

exercise its discretion" in determining whether the employer had proved the good faith defense. (*Seviour-Iloff, supra,* 80 Cal.App.5th at p. 449.) The Court of Appeal's characterization of the good faith defense provision was based on a misconstruction of the phrase " 'to the satisfaction of the court.' " (*Ibid.,* quoting § 1194.2, subd. (b).) As federal courts have observed with respect to the FLSA provision, that phrase simply indicates that an award of liquidated damages "is to be granted, or denied, by the court, as opposed to the jury." (*McClanahan v. Mathews* (6th Cir. 1971) 440 F.2d 320, 322.) It does not indicate that a court has discretion to deny or reduce a liquidated damages award without first determining that the employer has established the good faith defense. Courts make such determinations not as an exercise of discretion, but by applying the law to the facts of the case. Only when an employer has established the defense does a court have discretion to deny a request for liquidated damages or to award a lower amount of liquidated damages than would otherwise be required by the Labor Code's default rule. (§ 1194.2, subd. (b); see *Marshall, supra,* 668 F.2d at p. 753 [describing the operation of the FLSA provision in a similar way].) Otherwise put, the good faith defense provision permits courts discretion to deny or reduce an award of liquidated damages only if the employer has carried its burden to prove that "the act or omission giving rise to the action was in good faith and that the employer had reasonable grounds for believing that the act or omission was not a violation." (§ 1194.2, subd. (b).) When an employer does not carry that burden, the court must award liquidated damages. (§ 1194.2, subd. (a).)

Addressing this gap in the employers' proof, the Court of Appeal observed that, although the employers did not challenge

the trial court's ruling that Iloff was an employee, "there are some facts that could suggest" that Iloff was an independent contractor, including the "the lack of expectation or understanding by all parties that wages were required to be paid." (*Seviour-Iloff, supra,* 80 Cal.App.5th at p. 449.) In a similar vein, the employers argue that the law relating to the classification of employees was more unsettled during the time of Iloff's employment than it was at the time of trial and that, considering the unsettled state of the law, the fact that Iloff proposed the arrangement under which he would work on the property for free in exchange for housing supports a finding of good faith. In response, Iloff points to the trial court's findings that LaPaille controlled and directed his work and that the work was within the regular course of Bridgeville's business. He argues that these facts would have been just as dispositive of his employee status at the time of his employment as they were at the time of his trial, such that the employers cannot point to the relatively unsettled state of the law as evidence of their good faith. (See *Vazquez v. Jan-Pro Franchising Internat., Inc.* (2021) 10 Cal.5th 944, 953–958 [describing state of the law at the time of Iloff's employment].)

As a general matter, arguments like these may be relevant to the good faith defense. When an employer has made a reasonable attempt to determine the requirements of the law governing minimum wages, a court may consider evidence of the nature of the parties' relationship, their agreements with each other, and the legal landscape in determining whether the employer made a good faith effort to comply with those requirements. (See *McFeeley v. Jackson Street Entertainment, LLC* (4th Cir. 2016) 825 F.3d 235, 245 [holding employer had valid good faith defense after it sought and implemented an

attorney's incorrect advice about avoiding liability for misclassification, but not before it did so].)  Here, however, the employers have not shown they made any attempt to determine whether their arrangement with Iloff complied with the law governing minimum wages.  Having made no attempt to determine the requirements of the law, the employers cannot rely on arguments concerning the unsettled state of that law to prove that they acted in good faith in failing to comply with its requirements. (See *Alvarez, supra,* 339 F.3d at p. 910 [After-the-fact "explanation and justification" does not constitute "evidence to show that [an employer] actively endeavored to ensure . . . compliance" with the law]; *Chao, supra,* 516 F.Supp.2d at pp. 902–903 [rejecting defense where there was "no evidence that [the employers] ever took any affirmative steps to determine the proper classification of their employees, or to comply with those standards once they were known"]; *Gustafson, supra,* 171 F.Supp.2d 311 at pp. 326–327 [same].)  If the "mere assumption" that minimum wage law was inapplicable were sufficient to prove good faith, "no employer would have any incentive to educate itself and proactively conform to governing labor law." (*McFeeley*, at p. 245.)[4]

_____

[4] If the employers had established the good faith defense, the trial court could have considered evidence that Iloff proposed the work-for-rent arrangement when exercising its discretion to refuse to award liquidated damages or to award less than the full amount allowed.  (§ 1194.2, subd. (b).)

The employers also allege that Iloff had stolen equipment and supplies from Bridgeville to use in a cannabis operation and that he had not performed the basic services he had agreed to perform in exchange for rent.  We express no view on whether a court could have considered these allegations in determining

Employers may be concerned that requiring them to show that they made a reasonable attempt to determine the requirements of the law governing minimum wages places too great a burden on them.  Although we do not determine today the extent of the inquiry that is generally required, we note that what constitutes a reasonable attempt will vary by context.  An individual employing a person on a casual, irregular basis may not need to undertake the same kind of effort as an established business with regular employees.  Depending on the nature of the work arrangement at issue, a reasonable attempt to determine the requirements of the law will not necessarily entail significant effort or expense.  In many cases, even established businesses with regular employees may be able to satisfy this requirement without consulting legal counsel.

In this case, our determination is straightforward because the employers do not claim to have made *any* attempt to determine the requirements of the law governing compensation for Iloff's services to their business.  The trial court's findings that the employers and Iloff intended and expected that Iloff would perform his services in exchange for free rent and that he would not be paid wages or treated as an employee are legally insufficient to support a good faith defense to liquidated damages.  These findings establish that the employers did not understand that they were required to pay Iloff the minimum wage, but "ignorance alone" does not prove good faith. (*Marshall*, *supra*, 668 F.2d at p. 753.)  An employer must show it made a reasonable attempt to determine the requirements of the law governing minimum wages.  Because the employers did

whether to reduce Iloff's liquidated damages award if the employers had proved the good faith defense.

not make this showing, Iloff is entitled to an award of liquidated damages.

## B. A Trial Court May Allow an Employee To Raise a Paid Sick Leave Law Claim When an Employer Appeals a Labor Commissioner Ruling

The second question relates to the Paid Sick Leave law, which requires employers to provide their employees paid leave from work for health-related reasons or to care for sick family members. (§ 245 et seq.) As outlined above, Iloff raised a claim for penalties under the Paid Sick Leave law in the notice of claims he filed in the superior court in response to his employers' appeal of the Labor Commissioner's ruling. At issue is whether the superior court may consider a Paid Sick Leave law claim that an employee has raised in this manner. The Court of Appeal interpreted the Paid Sick Leave law as authorizing employees to raise claims before the Labor Commissioner but not in court. (*Seviour-Iloff, supra,* 80 Cal.App.5th at pp. 450–451.) We conclude that, considered in its broader statutory context, and bearing in mind the Legislature's purpose in enacting it, the Paid Sick Leave law is best understood to also authorize employees to raise claims in court in response to an employer's appeal, as Iloff did here.

As a preliminary matter, we agree with the Court of Appeal that the Paid Sick Leave law authorizes employees to raise claims before the Labor Commissioner. The Legislature's understanding that the Labor Commissioner would adjudicate Paid Sick Leave law claims is apparent on the face of the law's enforcement provision, section 248.5. Section 248.5, subdivision (a) provides: "The Labor Commissioner shall enforce [the Paid Sick Leave law], including investigating an alleged violation, and ordering appropriate temporary relief to mitigate the

violation or to maintain the status quo *pending the completion of a full investigation or hearing through the procedures set forth in Sections 98*, 98.3, 98.7, 98.74, or 1197.1 . . . ." (§ 248.5, subd. (a), italics added.) Section 248.5, subdivision (b) authorizes the Labor Commissioner to "order any appropriate relief" if it finds a Paid Sick Leave law violation "in any administrative proceeding under subdivision (a)." (§ 248.5, subd. (b)(1).) Section 98 — the first provision referenced in section 248.5, subdivision (a) — describes the Berman process, by which the Labor Commissioner adjudicates employees' claims for compensation and penalties based on Labor Code violations. (*Kho, supra*, 8 Cal.5th at p. 121.) Read in context, section 248.5, subdivision (a)'s reference to section 98 clearly indicates the Legislature's understanding that employees would raise Paid Sick Leave claims before the Labor Commissioner in the Berman process.

We disagree, however, with the Court of Appeal's conclusion that an employee may not raise a Paid Sick Leave law claim in response to an employer's appeal from the Labor Commissioner's ruling in the Berman process. Before we explain why we disagree, a little background on the Berman process may be helpful: The Berman process begins with an employee filing a complaint with the Labor Commissioner, who may conduct a hearing and issue an "order, decision, or award." (§§ 98, subd. (f), 98.1, subd. (a); see *Kho, supra,* 8 Cal.5th at pp. 121–122.) Section 98.2 provides that either party may challenge this ruling by "filing an appeal to the superior court," which tries the case "de novo," without giving any weight to the Labor Commissioner's determinations. (§ 98.2, subd. (a); see *Post v. Palo/Haklar & Associates* (2000) 23 Cal.4th 942, 947–948 (*Post*).) We have held that, in the context of such an appeal,

the trial court may, in its "sound discretion," allow an employee to raise additional claims that the Labor Commissioner did not consider during the administrative stage of the Berman process. (*Murphy*, *supra*, 40 Cal.4th at p. 1120; see *id.* at p. 1118 ["Trial courts are equipped to weigh the various considerations" associated with the possible addition of a claim, "e.g., whether the claims are sufficiently related, whether the interests of judicial economy will be served, and whether the employer will be prejudiced"].)

The Court of Appeal's interpretation of the Paid Sick Leave law turned on its interpretation of section 248.5, subdivision (a)'s list of procedures by which the Legislature contemplated "a full investigation or hearing" of a Paid Sick Leave law claim may be conducted. (See *ibid.* [listing "Sections 98, 98.3, 98.7, 98.74, or 1197.1"].) In holding that Iloff could not raise his Paid Sick Leave law claim in response to the employers' appeal of the Labor Commissioner's decision, the Court of Appeal observed that "[t]he right to appeal from a Berman hearing and have a trial court decide the matter de novo does not arise from section 98," but instead from section 98.2. (*Seviour-Iloff*, *supra*, 80 Cal.App.5th at pp. 450–451.) Noting the absence of section 98.2 from the list of enforcement mechanisms set out in section 248.5, subdivision (a), the court concluded, "[w]e cannot interpret section 248.5 to include enforcement via section 98.2." (*Seviour-Iloff*, at p. 451.) In short, the Court of Appeal inferred from the absence of a specific citation to section 98.2 in section 248.5, subdivision (a) that the Paid Sick Leave law could not be enforced in the context of a Berman appeal. (*Id.* at p. 451.)

A careful reading of section 248.5, subdivision (a) in its statutory context reveals that this inference was unfounded. An introductory provision of the Paid Sick Leave law specifies that

the law's provisions are "in addition to and independent of any other rights, remedies, or procedures available under any other law." (§ 245, subd. (b).) And section 248.5 itself specifies that the procedures it provides are "cumulative." (§ 248.5, subd. (g).) Read with these provisions in mind and considered in a broader statutory context, section 248.5, subdivision (a)'s reference to section 98 suggests that the Legislature contemplated that the Berman process would be among the avenues available for enforcing an employee's rights under the Paid Sick Leave law, alongside enforcement actions filed in court by the Labor Commissioner or the Attorney General. (See § 248.5, subd. (c) [authorizing the Labor Commissioner to take appropriate action, including filing a lawsuit, when "prompt compliance by an employer" with the Labor Commissioner's orders "is not forthcoming"], *id.*, subd. (e) [authorizing the Labor Commissioner and the Attorney General to file lawsuits to enforce the Paid Sick Leave law].) The reference to section 98 in section 248.5, subdivision (a) does not suggest that the Legislature intended to preclude an employee from raising a Paid Sick Leave law claim through a Berman appeal pursuant to section 98.2 — a "procedure[] available under any other law." (§ 245, subd. (b).)

While the Legislature certainly could have included a specific citation to section 98.2 in 248.5, subdivision (a)'s list of enforcement mechanisms, the citation's absence makes sense when section 98.2 is compared to the provisions that do appear in the list. The listed provisions all describe procedures by which an employee or the Labor Commissioner may initiate an enforcement action: Section 98.3 authorizes the Labor Commissioner to prosecute a civil action on the employee's behalf; sections 98.7 and 98.74 provide specific procedures for

initiating and prosecuting discrimination and retaliation claims; section 1197.1 establishes a procedure for the Labor Commissioner to issue citations for minimum wage violations. Section 98.2, by contrast, does not provide a procedure for initiating an enforcement action; instead, it only provides for an appeal from an enforcement action that an employee initiates through a process described in a separate provision — section 98 — which is listed in section 248.5, subdivision (a). Since section 98.2 only describes the procedures for appealing the Labor Commissioner's ruling, its absence from section 248.5, subdivision (a)'s list of mechanisms for initiating and prosecuting enforcement actions makes sense. The inclusion of section 98 in section 248.5, subdivision (a)'s list of pre-existing procedures suggests that the Legislature intended employees to be able to raise Paid Sick Leave law claims in the administrative Berman process; section 98.2's absence from the list does not, however, suggest that the Legislature intended to deprive employees of their right to raise Paid Sick Leave law claims in Berman appeals.

Indeed, when considered in a broader context, the fact that section 248.5, subdivision (a) includes section 98 in a list of statutory procedures for enforcing the Paid Sick Leave law suggests that the Legislature intended Berman appeals (provided for in section 98.2) to be available to parties prosecuting Paid Sick Leave law claims. When the Labor Commissioner holds a Berman hearing under section 98, the parties are entitled to appeal the Labor Commissioner's ruling under section 98.2. (*Post*, *supra*, 23 Cal.4th at p. 947.) A separate citation to section 98.2 in section 248.5, subdivision (a) was not needed to provide that authority.

Iloff observes that, as the Court of Appeal read the law, an employer's appeal would automatically deprive the employee of the ability to recover on a Paid Sick Leave law claim that the Labor Commissioner had found meritorious.  This is so because "[u]nlike an appeal in a civil action, the appeal of the commissioner's decision to the superior court . . . nullifies the decision, and the superior court conducts a new trial of the wage dispute."  (*Arias v. Kardoulias* (2012) 207 Cal.App.4th 1429, 1435 (*Arias*).)  That is, the statute permits employers to nullify the Labor Commissioner's award by filing an appeal, after which employees may recover only on those claims they raise in the superior court.  As Iloff notes, by precluding employees from raising their Paid Sick Leave Law claims in superior court in response to their employers' appeals, the Court of Appeal's interpretation would leave employees without any avenue to personally pursue their claims after the employer's appeal nullified the Labor Commissioner's award.

The legislative history of the Paid Sick Leave law contains no indication that the Legislature intended to preclude employees from raising Paid Sick Leave law claims in Berman appeals.  The Legislature enacted the law as a means of promoting the health, safety, and economic security of California workers, their families, and their communities. (2014 Cal. Legis. Serv. ch. 317, § 2.)  As originally enacted, section 248.5, subdivision (a) required the Labor Commissioner to investigate alleged violations of the Paid Sick Leave law and order "appropriate temporary relief to mitigate the violation or to maintain the status quo pending the completion of a full investigation or hearing." (See Stats. 2014, ch. 317, § 3, eff. Jan. 1, 2015.)  Since the Legislature did not enact any special procedure for the investigation or hearing of Paid Sick Leave

law claims, it presumably contemplated that the Labor Commissioner would use procedures set out in separate, unspecified Labor Code sections, such as the procedures governing Berman hearings and appeals, to conduct the referenced "full investigation or hearing." (*Ibid.*) In this way, the original version of section 248.5, subdivision (a) simply authorized the Labor Commissioner to order temporary relief pending a final ruling on an employee's Paid Sick Leave law claim.

The language specifying that the "full investigation or hearing" resulting in that final ruling would be conducted "through the procedures set forth in Sections 98, 98.3, 98.7, 98.74, or 1197.1" was added in 2020, as part of a bill that expanded Paid Sick leave entitlement in response to the COVID-19 pandemic. (§ 248.5, subd. (a), amended by Stats. 2020, ch. 45, § 5, eff. Sept. 9, 2020.) The limited discussion of this amendment in the legislative history reflects that the Legislature intended that the referenced "full investigation or hearing" of a Paid Sick Leave law claim would be conducted under procedures set forth in existing law. (See Legis. Counsel's Dig., Assem. Bill No. 1867 (2019–2020 Reg. Sess.) Sept. 9, 2020, p. 3 ["The bill would require the Labor Commissioner to enforce existing law and the bill's provisions through prescribed procedures"]; Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 1867 (2019–2020 Reg. Sess.) as amended Aug. 28, 2020 [The bill "[s]pecifies that the Labor Commissioner, when enforcing paid sick days laws, may issue citations, file a civil action, and use administrative proceedings set forth in existing law, as specified"].) As revised, the provision now lists procedures by which a "full investigation or hearing" of a Paid Sick Leave law claim may be conducted and specifies that the

Labor Commissioner may provide temporary relief pending a final ruling on the claim. (§ 248.5, subd. (a).) There is no indication that the Legislature's intent in adding the list of statutory procedures was to *restrict* the use of procedures listed elsewhere in the Labor Code — such as those governing Berman appeals — to enforce the Paid Sick Leave law. Read with this legislative history in mind, the language of section 248.5, subdivision (a) does not support the employers' view that the Legislature intended to preclude employees from pursuing Paid Sick Leave law claims in Berman appeals.

Our conclusion that the Legislature did not intend to preclude employees from raising Paid Sick Leave law claims in Berman appeals finds further support in our decision in *Murphy*, *supra*, 40 Cal.4th 1094, issued in 2007. As here, the employer in *Murphy* appealed the Labor Commissioner's administrative ruling, and the employee, represented by an attorney from the Labor Commissioner's office, filed a notice of claims asserting additional claims not raised before the Labor Commissioner. (*Id.* at p. 1101.) The employer objected, arguing that section 98.2 did not authorize employees to raise new claims in the context of a Berman appeal. (*Murphy*, at p. 1101.) We rejected the employer's argument, clarifying that a trial court has discretion to consider additional related claims that the Labor Commissioner did not consider during the administrative portion of the Berman process. (*Id.* at p. 1120.) We presume that the Legislature was aware of *Murphy* when enacting the Paid Sick Leave law in 2014 and when it added the reference to section 98 in 2020. (See *Buckley v. Chadwick* (1955) 45 Cal.2d 183, 200 ["[T]he Legislature is presumed to have had knowledge of existing domestic judicial decisions and to have enacted and amended statutes in the light of such decisions as

have a direct bearing upon them"].) When considered against the backdrop of our decision in *Murphy*, the Legislature's inclusion of section 98 in the list of procedures by which the Labor Commissioner may enforce the Paid Sick Leave law suggests that the Legislature intended the full Berman process — including the opportunity to raise additional related claims on appeal — to be available to employees seeking to enforce their rights under the law. The absence of any specific citation to section 98.2 does not indicate legislative intent to preclude enforcement in a Berman appeal. Omitting a citation from a long list of other citations — without any discussion in the legislative history — would be an exceedingly subtle way for the Legislature to indicate an intent to preclude employees from pursuing Paid Sick Leave law claims in Berman appeals, as would otherwise be their right under *Murphy*.

In holding that a court cannot consider a Paid Sick Leave law claim in a Berman appeal, the Court of Appeal appears to have conflated a Berman appeal with a "private right of action." (See *Seviour-Iloff*, *supra*, 80 Cal.App.5th at p. 451 ["We cannot interpret section 248.5 to include enforcement via section 98.2. [Citation.] Accordingly, we conclude there is no private right of action to seek administrative penalties under section 248.5 [fn. omitted]"].) Noting that section 248.5 expressly authorizes the Labor Commissioner and the Attorney General to enforce the Paid Sick Leave law by filing lawsuits, the court observed that there is nothing in the provision's language that "indicates a private right of action." (*Seviour-Iloff*, at p. 450, citing § 248.5, subd. (e).) A Berman appeal, however, is not a "private right of action." Instead, it is a procedure for de novo reconsideration of the Labor Commissioner's ruling in the administrative stage of the Berman process. Section 98.2 does not authorize an

employee to file suit directly in court; it authorizes an appeal from the Labor Commissioner's administrative ruling. (*Id.*, subd. (a).) When, as is the usual case, the employer files the appeal, the employer must post a bond with the court in the amount of the Labor Commissioner's award. (*Id.*, subd. (b).) And the Labor Commissioner's office may — and in certain circumstances must — step in to represent an unrepresented employee. (§ 98.4.) Counsel is likely to uncover and raise additional related claims that the employee did not raise in the administrative stage of the Berman process. (*Murphy, supra*, 40 Cal.4th at p. 1119.) The fact that section 98.2 authorizes employees to pursue these claims in the superior court in response to an employer's appeal does not transform a Berman appeal into a "private right of action." (*Seviour-Iloff*, at p. 451.)

Without a private right of action, employees are left with the Berman process as their sole avenue for vindicating their rights under the Paid Sick Leave law. (See *Wood v. Kaiser Foundation Hospitals* (2023) 88 Cal.App.5th 742, 757 (*Wood*).) Under the Court of Appeal's construction of section 248.5(a), a worker may file a Paid Sick Leave Law claim before the Labor Commissioner in the administrative stage of the Berman process but may not raise that claim in the de novo trial following an employer's appeal of the Labor Commissioner's decision. As discussed above, such a construction would permit an employer to nullify the Labor Commissioner's award on a claim brought under the Paid Sick Leave law simply by filing an appeal. (See *Arias, supra*, 207 Cal.App.4th at p. 1435 [appeal "nullifies" Labor Commissioner's decision].) And even where, as here, an employee did not raise a Paid Sick Leave law claim before the Labor Commissioner, an employer who appeals would not face the risk that an employee's newly obtained counsel

would uncover a Paid Sick Leave law claim and raise it in the Berman appeal proceedings. This is contrary to the Legislature's intent. (See *Murphy*, *supra*, 40 Cal.4th at p. 1119 [reasoning that allowing employees to raise additional claims in Berman appeals, for which they often obtain assistance of counsel, deters frivolous appeals by employers, furthering the legislative policy of promoting expeditious resolution of claims].) If an employee could not pursue a Paid Sick Leave law claim in a Berman appeal, the only remaining avenue of enforcement would be for the Labor Commissioner or the Attorney General to bring a separate enforcement action. (§§ 248.5 (c) & (e); 98.3, subd. (b).)[5]

It is "unclear what interest would be served" by requiring the Labor Commissioner or the Attorney General to raise a Paid Sick Leave law claim in a separate lawsuit rather than allowing the employee (often represented by an attorney from the Labor Commissioner's office) to raise the claim in response to the employer's appeal of the Labor Commissioner's ruling.

---

[5] In *Wood*, *supra*, 88 Cal.App.5th at p. 764, the Court of Appeal held that section 248.5 does not preclude an employee from bringing an action based on failure to comply with the Paid Sick Leave law under the Labor Code Private Attorneys General Act of 2004 (PAGA) (§ 2698 et seq.). A PAGA action, however, does not allow an employee to seek relief equivalent to that available through the Berman process. In a PAGA action, the employee sues as "the proxy or agent of the state's labor law enforcement agencies" and as such, may recover only civil penalties that would otherwise be assessed and collected by the state. (*Arias v. Superior Court* (2009) 46 Cal.4th 969, 986.)

(*Murphy*, *supra*, 40 Cal.4th at p. 1118.)[6]  Particularly given the limited resources available for government enforcement of the Labor Code, depriving courts of the authority to allow Paid Sick Leave law claims in Berman appeals would contradict section 98's basic promise of providing employees with an expeditious and accessible method for resolving their claims — a method the Legislature intended to make available to employees whose rights under the Paid Sick Leave law had been violated.  (See *ibid.* [forcing an employee to file a separate complaint to raise claims that had not been raised before the Labor Commissioner " 'would appear inconsistent with the legislative purpose under Labor Code section 98 of providing an expeditious resolution of wage claims . . . .' "]; cf. *Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348, 379 [describing legislative findings regarding limited enforcement resources].)  Such a construction would be contrary to our practice of liberally construing the Labor Code to give effect to its worker-protective purposes — here, the Legislature's purpose, in enacting the Paid Sick Leave law, to promote the health, safety, and economic security of California employees, their families, and their communities.  (See Assem. Bill No. 1522 (2013–2014 Reg. Sess.) § 2; *Augustus*, *supra*, 2 Cal.5th at p. 262.)  For these reasons, we

---

[6] *Murphy*, *supra*, 40 Cal.4th 1094 involved additional wage claims that the employee "could have filed [in] a separate civil complaint."  (*Id.* at p. 1118.)  We observed there that it was "unclear what interest would be served" by requiring an employee to file a separate lawsuit to raise those additional claims, which could then be consolidated with the Berman appeal, rather than simply allowing the employee to raise those claims in the Berman appeal.  (*Ibid.*)  The interest here in requiring the Labor Commissioner or the Attorney General to file a separate suit is similarly unclear.

hold that an employee may properly raise claims under the Paid Sick Leave law in the context of a Berman appeal and reverse the Court of Appeal's contrary determination.

## DISPOSITION

We reverse the judgment of the Court of Appeal and remand for further proceedings consistent with our decision.

**GROBAN, J.**

**We Concur:**

**GUERRERO, C. J.**
**CORRIGAN, J.**
**LIU, J.**
**KRUGER, J.**
**JENKINS, J.**
**EVANS, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion**  Iloff v. LaPaille

---

**Procedural Posture** (see XX below)
**Original Appeal**
**Original Proceeding**
**Review Granted (published)** XX 80 Cal.App.5th 427
**Review Granted (unpublished)**
**Rehearing Granted**

---

**Opinion No.** S275848
**Date Filed:** August 21, 2025

---

**Court:**  Superior
**County:**  Humboldt
**Judge:**  Timothy Canning

---

**Counsel:**

David M. Balter for Plaintiff and Appellant.

George A. Warner and Julia Parsh for Legal Aid at Work, Asian Americans Advancing Justice – Asian Law Caucus, Bet Tzedek, California Employment Lawyers Association and California Rural Legal Assistance Foundation as Amici Curiae on behalf of Plaintiff and Appellant.

Janssen Malloy, Amelia F. Burrough and William H. Stein for Defendants and Respondents.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

David M. Balter
Division of Labor Standards Enforcement
Department of Industrial Relations
455 Golden Gate Avenue, 9th Floor
San Francisco, CA 94102
(415) 703-5870

William H. Stein
Janssen Malloy LLP
730 5th Street
Eureka, CA 95501
(707) 445-2071